CHARLES I. BOLLES

v.

THE CRESCENT DRUG AND CHEMICAL COMPANY.

A, a corporation, entered into a contract with B, that B should at his own expense erect and operate a soda fountain in the store of A, and that B should receive eighty-five and A fifteen per cent. of the gross receipts, and that the contract should exist for three years.—*Held*, that the contract was not rescinded by a decree that A was insolvent.

On appeal from the determination of receiver.

The Crescent Drug and Chemical Company, on April 25th, 1893, entered into an agreement with Jacob and Henry A. Haussaling, executors of Henry Haussaling, by which agreement the

said executors contracted to place on the ground floor and basement of the premises of the Crescent Drug and Chemical Company, in the city of Newark, suitable soda water fountains and appliances for carrying on the soda water business, within thirty days from the date of the agreement, the said plant to remain the property of the executors. All the expense of doing this was to be borne by the said executors.

The executors agreed, in lieu of rent for the use of the said premises, to receive fifteen per cent. of the gross receipts of the sales made by them at the fountain. It was agreed that all the receipts should be turned in daily to the cashier of the Crescent Drug and Chemical Company, and on the Monday morning of each week an account of the sales should be taken, and the amount of such gross sales, less fifteen per cent., should be paid over to the executors. No cash was to be taken at the fountain, but a system of checks was to be employed, and such checks were to be delivered to the fountain for his or her order. All expenses of running the fountain, except the expense of receiving cash, was to be borne by the executors. It was stipulated that the agreement or lease was to continue in force for a period of five years, unless sooner abrogated by mutual consent, or violated by the wrongful acts of either of the parties; and in case the lease or agreement should be violated by either of the parties, the party so violating it should be liable in full damages to the other completely. This agreement was signed by the respective parties.

Subsequently the Crescent Drug and Chemical Company were decreed insolvent and a receiver was appointed. After such insolvency the lease was assigned by the executors to one Lillie I. Bolles, in March, 1894. The receiver terminated the soda water business and excluded the executors when he took possession of the premises of the insolvent corporation.

Lillie I. Bolles, assignee of the contract, made her claim for damages by reason of such act of the receiver. The receiver interposed an objection to the claim, and the objection is, that the contract did not survive the insolvency of the Crescent Drug and Chemical Company.

*Mr. Edward H. Murphy*, for the petitioner.

*Mr. Robert McCarter*, for the receiver.

REED, V. C.

The single question submitted to me for decision is whether the insolvency of the corporation terminated the lease or agreement, the terms of which are already displayed.

It is, of course, not denied that, as a rule, the fact of insolvency will not rescind the contracts previously entered into by a bankrupt. Nor will the fact that the bankrupt is a corporation affect this general rule. The common-law doctrine that, upon dissolution, the property of the corporation reverted to the crown, has never been recognized in this country. *Wait Insolv. Corp.* §§ *381, 382; Mumma* v. *The Potomac Co., 8 Pet. 286; Curran* v. *Arkansas, 15 How. 304; People* v. *National Trust Co., 82 N. Y. 283.*

And in this state, when the dissolution of a corporation is the result of insolvency, the statute provides that the assets shall be distributed to its creditors. Under the English bankrupt acts, while bankruptcy or insolvency did not discharge the contracts of the bankrupt or insolvent, yet, in the distribution of the assets, inequality existed between different kinds of claims. The reason for this is pointed out by the chancellor in his opinion in *Spader* v. *Mural Decoration Manufacturing Co., 2 Dick. Ch. Rep. 18.* It was because there was no provision for the ascertainment of damages; therefore, all claims that sounded in unliquidated damages were, by judicial construction of the statute, disallowed. The only remedy left was an action against the bankrupt himself. It followed that when a bankrupt was sued, the test of the plaintiff's right to pursue his action was whether the claim was provable in a bankruptcy proceeding. If it was provable, then that was the appropriate remedy; but if it was not provable, the liability of the bankrupt to the action remained. *Boorman* v. *Nash, 9 Barn. & C. 145; Mills* v. *Auriol, 1 Hen. Bl. 433.* This inequality has been remedied by the later English bankruptcy acts of 1862, 1869 and 1883 in a degree,

and also by statute in many states. The English bankruptcy acts yet contain explicit directions in respect to the manner in which the trustee shall deal with creditors, so that many of the bankrupt cases in the English courts deal only with construction of these statutes. These cases are of little value as guides in the equitable distribution of assets under our Corporation act, as there are in our statute no restrictions aside from the primary maxim that equality is equity.

The question then remains whether the fact of the insolvency of this corporation annuls this particular contract. If so, it must be either because it belongs to an exceptionable class of contracts, or else because it contains in itself a provision for its own rescission in the event of insolvency. It would seem obvious that if the insolvency of a corporation is to be held to annul any class of contracts, that class would naturally be those which are dissolved by the death of one of the parties. Indeed, there is an intimation in the opinion in *People* v. *Globe Mutual Life Insurance Co., 91 N. Y. 174,* that insolvency is equivalent to death in cases of contracts for skilled personal services.

But the decision was not rested upon that point, but was put upon the ground that the service was interrupted by the act of the state, and that it was not shown that the dissolution was the result of any fault of the corporation. The ground of decision in that case does not seem to be very perspicuous or satisfactory in any view, but the case certainly does not hold that contracts for personal services are rescinded by the insolvency of a corporation.

This is apparent from the fact that the following cases were recognized as authoritative: *Yellande's Case, L. R. 4 Eq. 350; Clark's Case, L. R. 7 Eq. 550; Logan's Case, L. R. 9 Eq. 149; Maclure's Case, L. R. 5 Ch. App. 737; Dean & Gilbert's Case, L. J. 41 Ch. (N. S.) 476,* and that there was only an attempt to distinguish these cases from the one then before the court.

This is the same group of cases properly relied upon by the chancellor in *Spader* v. *Mural Decoration Manufacturing Co., supra,* as authorities for fixing the measure of compensation for

the loss of a contract for service as salesman and foreman for a term of years, which loss resulted from the insolvency of the employing corporation.

All the cases cited are of this kind, the last one of them involving a claim for commissions, filed by a commercial traveler for services rendered in the business of a company which had become insolvent.

But my attention has been called by counsel for the receiver to a line of cases in which it is held that an assignee or a receiver of an insolvent lessee is not bound to pay subsequently-accruing rent according to the terms of the lessee's covenant, unless the receiver retains possession of the premises, or by some act adopts the lease. And it is insisted that if we regard the present contract as a lease, and if we concede that the receiver of an insolvent lessee is exempt from any liability for the lessee's covenants to pay rent, it must follow that the receiver of an insolvent lessor is equally irresponsible for the lessor's covenants. The cases cited in support of the immunity of the lessee's receiver, are these: *Quincy M. & P. R. R. Co.* v. *Humphreys, 145 U. S. 82; Commonwealth* v. *Franklin Insurance Co., 115 Mass. 278; Woodruff* v. *Erie Railroad Co., 93 N. Y. 624; Stockton* v. *Mechanics' &c. Bank, 5 Stew. Eq. 163.*

The doctrine announced in these cases is traceable back to the cases of *Bourdillon* v. *Dalton, Peake 238; Turner* v. *Richardson, 7 East 335; Wheeler* v. *Bramah, 3 Campb. 340; Copeland* v. *Stephens, 1 Barn. & Ald. 593.*

At the period when the last-mentioned adjudications were pronounced, subsequently-accruing rent was regarded as a contingent claim which was not provable against the bankrupt under the then existing Bankrupt act. The assignee might, for the benefit of the bankrupt's estate, choose to carry out the terms of the letting. If he did this the lessor got a right, not merely to share in the assets of the bankrupt, but he got a right to the payment of the whole of the rent according to the terms of the lessee's covenant.

An assignee, after his appointment, has a reasonable time to look over the ground and determine what contracts he regards

as beneficial or otherwise to the estate which he is administering. Subject to the control of the court appointing him, he can adopt an advantageous contract and repudiate an unfavorable one. If he concludes to insist upon the completion of the contract by the contracting party, he must perform his side of the contract in full. If his performance involves the payment of money by him, such payment he must make; but if he ignores the contract, the only redress of the other party is to ask leave to prove his debt or damages for the purpose of sharing in the assets of the insolvent.

In instances where the insolvent holds a lease with covenants binding him to pay rent, this rule applies to the assignee in bankruptcy, or the receiver in insolvency. If he chooses to take possession of, or assume the management of, the estate, or do some other act indicating his intention to accept the term, a privity at once arises between him and the landlord and he becomes bound for the rent in full. Unless, however, the assignee or receiver assumed the lease, there was, under the earlier English statutes, no right to prove for subsequent rent. Nevertheless, it was never understood that the contract between the landlord and the lessor was discharged by the failure of the assignee to adopt the lease. Under the earlier acts the bankrupt remained liable for the rent. *Tayl. Land. & T. 456; 2 Platt Leas. 354.*

The later English bankrupt statutes contain provisions for a disclaimer by a trustee of an insolvent lessee of all right in the term, and so leave the landlord his reversion disencumbered of the lease. But by the extension of the right to prove for unliquidated damages arising from breach of contract, the landlord is not restricted to the mere return of the unexpired term. In *Ex parte Llynvi Coal & Iron Co. re Hide, 7 L. R. Ch. App. 28*, it was held that inasmuch as the effect of sections 23 and 31 of the act of 1869 is to relieve the bankrupt from every liability upon contract which he has ever entered into, and the creditor is so deprived of his right of action against the bankrupt, he can therefore prove against the estate in respect to any claim for which he could have sued the bankrupt if solvent. A landlord, although the trustee had disclaimed a lease, was held to be

entitled to prove the difference in value of the term, between what he was to receive by his contract and the present letting value. of the premises for the same period.

To the same purport is the case of *Ex parte Blake re McEwan*, *11 L. R. Ch. Div. 572.*

In this country the doctrine in respect to the right of the landlord to prove for subsequent rent varies. In some jurisdictions, following the earlier English cases already mentioned, no right in the landlord is recognized; while in other jurisdictions a contrary view has been adopted.

In respect to the matter just mentioned, Chancellor Walworth, in his opinion in the case of *Martin* v. *Black, 9 Paige 641*, uses this language: "If the assignee elects to waive the term and neither enters upon the demised premises nor does any other act signifying his acceptance of the term as assignee, he is not liable for the rent, but he must come in as a general creditor of a bankrupt's estate, or may sue the bankrupt for the rent subsequently accruing."

In the case of *People.* v. *National Trust Co., supra*, in which it was held that a lease of a corporation was not terminated by its dissolution, and its covenant to pay rent does not thereupon· cease to be obligatory, the court remarked.: "The position of a receiver is analogous to that of an executor. If he waives the term he cannot be charged as assignee of the lease, but if the landlord does not choose to re-enter, the estate of the testator may be liable for the rent in the course of administration."

In the case of *Stockton* v. *Mechanics' &c. Bank, supra*, Chancellor Runyon, while merely answering the question propounded by a receiver as to whether subsequently-accruing rent should be paid, and apparently be paid in full, seems, by the language of his opinion, to exclude the lessor from any right in the assets at all. But, regarding that case as definitely denying the lessor's right to so prove against the insolvent estate of the lessee, yet it is perceived that it, as well as the line of cases of which it is the sequence, deals only with the particular covenant to pay rent, after the landlord is at liberty to resume possession of the leased property.

The liability of the estate of an insolvent lessor for breaches of his covenants was not involved.

Nor can I perceive why the rule which sprang from the causes already mentioned should be applied to any other covenant of any other class of persons. Upon the theory, then, that the insolvent was a lessor, in my judgment its bankruptcy did not annul its liability to its lessee. If the receiver took possession of the estate of the insolvent landlord, he took it *cum onere*, subject to the contract of letting entered into by the drug and chemical company. If he did not take possession, yet there is the personal undertaking of the lessor, which was broken by reason of the insolvency of the lessor; and there is no technical rule, and no case, which shuts out a lessee from proving his damages arising from such a breach of contract.

But it is not to be conceded that the agreement under discussion, although styled by the parties "lease or agreement," creates any tenure, or possesses any force other than as a contract for certain privileges in the premises of the drug company. It is perceived that by the terms of the agreement, no specified space and no particular location is assigned to the exclusive possession of the petitioner's assignor. The privilege contracted for was to have a place assigned to them upon the premises, somewhere in the basement of No. 631 Broad street, and somewhere on the ground floor of No. 629 and 631. It was an agreement to have the privilege of conducting a line of business in the premises of the defendants for a certain compensation, the amount of which was dependent upon the quantity of business done. This, in my opinion, can be regarded in no sense as a lease.

But as I understand the insistence of counsel, his main point is, that in this contract itself there is to be found an intention that its duration is to be limited to a period of time co-terminous with the continuation of the drug and chemical company's business. The insistence is this: The drug and chemical company had the right to terminate the relation between themselves and the executors whenever it pleased by the mere cessation of their business, and by the closing of their premises; that the insolvency of the company and the appointment of a receiver, which

led to this condition of affairs, operated to produce the same result.

Now, undoubtedly, the parties had the right to so stipulate, but such intent I fail to discover in the contract itself. It is to be observed that there is nothing which indicates that the soda water business was to be a part of the business of the drug and chemical company. It is possible that it was in the mind of the contracting parties that the stand would be more favorable for the trade in soda water because the premises were to be used also for the ordinary business of a drug store. But this inference is only to be drawn from the frequent association of the two kinds of business. There is absolutely nothing to be found in the agreement by which the five years' duration of its term is to be contingent upon the continuation of the defendant's business.

Indeed, there is no undertaking on the part of the defendants to transact any particular business upon the premises; there exists no right in the executors to compel them to do so, and there is no condition that upon their ceasing to do so the contract duty of the executors should cease.

All that the drug and chemical company contracted to do was to permit the soda water people to have a space in their premises to put in position and operate a fountain. That, they were bound to do for five years, just as the chemical company was bound to afford them the privilege of doing it for the same length of time.

Nor do I see how the case of *Aspdin* v. *Austin*, *5 Ad. & E.* (*N. S.*) *670*, in the least supports the receiver's contention. In that case the plaintiff agreed to manufacture cement for the defendant; the defendant, on condition of the plaintiff's performing, promised to pay £4 weekly during two years, and £5 weekly during the next year, and also to receive him into partnership at the end of three years. In an action brought by the discharged servant upon an implied covenant to continue the business for three years, the court held that he had mistaken his remedy; that while the defendant was bound by his express covenant to pay during the period the amounts named, there was no implied

covenant to continue the business during that period. It was held that although the defendant did not continue the business, yet he was bound to pay according to his promise so long as the plaintiff was ready to perform and was only prevented from so doing by the defendant's discontinuance of the business. The rule in this case certainly does not aid the receiver's construction of the contract.

In conclusion, it need hardly be remarked that a liberal view of the scope of the term "creditor" in our statute is absolutely essential in accomplishing an equitable result in the distribution of assets.

This disposition of the property of an insolvent corporation is its death; and if those who could have recovered from it, had it remained solvent and broken its contract, are precluded from proving their claims and sharing in the assets—they are left remediless.

Whether this petitioner should now be permitted to come in, or whether any particular amount of damages, under the circumstances, are provable, is not a question submitted for my decision. Upon the question submitted I am of the opinion that the insolvency of the corporation did not rescind or terminate the contract now in question.