THE STATE, EX REL. THE NORTH AMERICAN PHONO-
GRAPH COMPANY, PROSECUTOR, v. THE STATE BOARD
OF ASSESSORS.

A corporation of this state, which, by contract with another corporation,
located here, gives to it the exclusive right to make phonographs, and
takes all made, at the cost of materials and labor, with a percentage for
profits and depreciation; having, also, an office and a factory where
parts of the phonographs are made within this state, is "*a manufacturing
company, carrying on business in this state*," and exempt from state taxes,
under act of April 18th, 1884. *Rev. Sup., p.* 1016.

On *certiorari.*

Argued at November Term, 1892, before Justices DEPUE,
VAN SYCKEL and SCUDDER.

For the plaintiffs, *Cortlandt & R. Wayne Parker.*

For the state, *John P. Stockton, Attorney General,* and
*William Y. Johnson.*

The opinion of the court was delivered by

SCUDDER, J.   This writ is directed to the state board of
assessors to review an assessment of taxes, made against the
prosecutor, in the years 1889 and 1890, under the act entitled
"An act to provide for the imposition of state taxes upon
certain corporations, and for the collection thereof," approved
April 18th, 1884. *Rev. Sup., p.* 1016.

The return to the writ shows that these assessments have
been made on a basis of $6,600,000, issued capital stock, and
that a tax of one-tenth of one per cent. on the amount of
capital stock, less a small percentage, has been assessed for
the years 1889 and 1890, respectively, amounting to $6,500
for each year.

The right to make any assessment is challenged by the com-
pany, and they claim an exemption under section 4 (12) of the

act of 1884, which provides that this act shall not apply (among others) to manufacturing companies, carrying on business in this state.

The certificate of incorporation of the company, filed in the office of the secretary of state July 16th, 1888, sets forth " that the objects for which the company is formed are to manufacture, trade in, buy, sell, rent, lease and otherwise acquire, hold and dispose of phonographs, phonograph graphophones and instruments of any other kind or description, made or used, or intended for the recording and reproducing of sounds, and any or either of them, or any part thereof; and any and all supplies, appliances, materials and articles now used or required, and that may be hereafter used or required in the manufacture, use or operation of said phonographs," &c.

It is further certified that the principal place of business of the said company, and the place where its principal office is to be located, are the city of Jersey City, in the county of Hudson.

They have the upper floor of a large warehouse on Morris street, in Jersey City, where they manufacture supplies belonging to the phonographs, in the shape of funnels and musical records. The amount of money invested there is small, estimated to be about $5,000 or $6,000. It also appears that they have an office at Jersey City, and a branch office at No. 160 Broadway, New York city.

There is a contract in writing, dated August 1st, 1888, between the North American Phonograph Company (the prosecutor) and Jesse H. Lippincott of the first part, and the Edison Phonograph Works, a corporation of the State of New Jersey, party of the second part, by which " the party of the first part agrees to grant, and hereby does grant, to the party of the second part, the sole and exclusive right to manufacture the phonograph, and the various devices and apparatus used in connection therewith, and supplies therefor, in perpetuity; and agrees that it will not authorize the manufacture thereof by others. The party of the second part

agrees to manufacture and deliver the aforesaid phonograph, and the various devices and apparatus used in connection therewith, and the supplies therefor, to the party of the first part, at the actual cost of manufacture, plus twenty per cent. thereof, the cost of manufacture to include cost of labor, material and general expense; and included in general expense shall be five per cent. of labor and material for depreciation of plant."

In one of the succeeding articles of this contract it is stipulated "that the party of the second part (Edison Phonograph Works) shall keep its facilities for manufacture up to the reasonable demands upon it, and will not manufacture phonographs and supplies for use within the United States and Canadas for parties other than the North American Phonograph Company."

The large capital of $6,600,000 is invested, by their estimation, in patents, under which this manufacture of phonographs is carried on, excepting the sum of $40,000, which was actually expended in the business of organizing the company. The prosecutor claims the exclusive right to manufacture phonographs under these patents. The manufacture is carried on at the Edison Phonograph Works in Orange, New Jersey, whose plant of real estate, machinery, &c., is estimated, by the evidence, at one-half a million of dollars. This plant is used for the manufacture of the phonograph of the North American Company, exclusively, excepting for the manufacture of the phonograph dolls, which portion is, in size and value of the manufacture, about one-twentieth part of the whole product of the works. The great object in manufacturing at the Edison Phonograph Works is said to be to get the services of Thomas A. Edison, the president, in the management; and he is allowed several thousand dollars each year for salary and for experimental work.

There are about three hundred workmen employed in the works, and about twenty-five in Jersey City.

It thus appears that all the goods manufactured and sold by the prosecutor are prepared in this state, and that they do

not manufacture phonographs elsewhere. The work is not done by themselves directly, but by a manufacturing agency.

By the partial statement of account between these parties it appears that from February 22d, 1889, to June 30th, 1890, there were seven thousand three hundred and forty-five phonographs made, at a cost, under the contract, of $372,139.46, on which account the prosecutor paid the sum of $361,474.39.

With these facts given, the question to be determined is, Whether the North American Phonograph Company is "a manufacturing company, carrying on business in this state?"

It is certain, that the phonographs, which they are incorporated to make, are made by their procurement in this state, and that they take them when manufactured, and pay all the expenses of materials, labor and other charges under the contract. The contention on the part of the state assessors is, that by this arrangement the Edison Phonograph Company is the manufacturer, and the North American Phonograph Company is the purchaser of the manufactured products at a stipulated price. But the position of the parties, in my judgment, is not that of maker and buyer, but of principal and agent, and whether the agency is conducted by an individual, or by an aggregation of individuals called a corporation, is immaterial.

The great value of the plant is the patent right to make the phonograph; without this, the manufacture could not lawfully be carried on. This is the property of the prosecutor, and without it the materials and labor used in its construction would be of little value. The prosecutor can hardly be said, therefore, to be purchaser of this phonograph in which they have the peculiar property right which forbids its sale to any other person. In effect, the prosecutor controls the manufacture of these phonographs, and the Edison company is but the instrument by which they are made. The plant of this company is *pro hac vice* its plant, and it is thereby located and carries on business within this state.

The object of the proviso in the fourth section of the statute, imposing state taxes on certain corporations, is to

exempt those specially named, because of the great incidental benefits conferred by them on the people of the state. Manufacturing companies and mining companies require a large expenditure in the erection and maintenance of buildings and machinery, and give employment to many; hence, they are classed among those which are to be fostered and favored by the state. While this as all other exemptions from general taxes should be carefully guarded and strictly administered, it should not be so enforced as to discourage the establishment and continuance of a business in our state which is so remarkable for the wonderful scientific discovery which has made it possible, and the requirement of skilled labor in its successful accomplishment.

This case is distinguishable from *Norton Construction Company* v. *Board of Assessors*, 24 *Vroom* 564, where there was no actual location of the business within the state, and the work had not yet begun. Here all the work of manufacturing under the charter is done at a fixed location in our state, and the entire expense and risk of the business are sustained by the prosecutor.

The taxes imposed on the prosecutor in 1889 and 1890 will be set aside.