ANDREW KIRKPATRICK, RECEIVER OF THE DOMESTIC SEWING MACHINE COMPANY, PROSECUTOR, v. THE STATE BOARD OF ASSESSORS. .

1. Putting a corporation in charge of a receiver does not work its dissolution. The corporation continues to exist until its dissolution is effected either by surrender or judicial decision. Meanwhile the corporation exists with all its franchises, exercisable by the receiver in the management of its affairs, subject to all the duties, obligations and liabilities that rested upon the corporation itself, among which is liability to taxation, the same as the corporation itself would have been subject to in case the management and control of its affairs had not been committed to a receiver.

2. An assessment for taxes made by the state board of assessors on a statement returned in compliance with the statute should be a finality, and not be set aside or disturbed unless it be overcome by the most satisfactory proof that it is erroneous in fact. In a suit to set aside such assessment prosecuted by the company, it would not be allowed to gainsay the return of its officer, unless on proof of conduct on his part in fraud of the company.

3. A return made to the state board of assessors just before the appointment of a receiver, may justify further investigation at the instance of the creditors of an insolvent corporation.

On *certiorari* in matter of taxation.

Argued at February Term, 1894, before Justices DEPUE and REED.

For the prosecutor, *Coult & Howell.*

*Contra, William Y. Johnson.*

The opinion of the court was delivered by

DEPUE, J.   This *certiorari* brings up a franchise tax assessed upon the Domestic Sewing Machine Company by the state board of assessors for the year 1893.

The return of the company on which the assessment was computed was made May 3d, 1893.   The assessment made by the board was filed with the comptroller June 5th, 1893.. Between the date of the return made by the company and the filing of the assessment in the comptroller's office, to wit, June 2d, 1893, proceedings in insolvency were commenced against the company, and Andrew Kirkpatrick was appointed receiver.   The insolvency proceedings are still pending, and the corporation has not been dissolved.   This writ is sued out by the receiver.

Putting a corporation in charge of a receiver does not work its dissolution.   The corporation continues to exist until its dissolution is effected either by surrender or judicial decision.. Meanwhile the corporation exists with all its franchises, exercisable by the receiver in the management of its affairs, subject to all the duties, obligations and liabilities that rested upon the corporation itself, among which is liability to taxation, the same as the corporation itself would have been subject to in case the management and control of its affairs had not been committed to a receiver.   *New Jersey Southern Railroad Co.* v. *Railroad Commissioners,* 12 *Vroom* 235.   This conclusion disposes of all the reasons relied on for setting aside this assessment, except the first.

The reason for reversal to be considered is in these words :. "Because the Domestic Sewing Machine Company is a manufacturing corporation, organized under the laws of the State of New Jersey, and carrying on business in this state, fifty per cent. of whose capital stock, issued and outstanding, was at the time of the imposition of said tax invested in manufacturing carried on within this state."

The act in virtue of which this assessment was made contains a proviso that the act shall not apply to manufacturing or mining corporations, at least fifty per cent. of whose capital stock, issued and outstanding, shall be invested in mining or manufacturing carried on within this state; if any manufacturing or mining company carrying on business in this state shall have less than fifty per cent. of its capital stock, issued and outstanding, invested in business carried on within this state, such company shall pay the annual license fee or franchise tax therein provided, but shall be entitled in the computation of such tax to a deduction from the amount of its capital stock of the assessed value of its real and personal estate so used in manufacturing or mining. *Pamph. L.* 1892, *p.* 139, § 4.

The amount of the tax laid is $1,431.10. It was computed upon the following basis:

Capital stock issued.......................................$1,641,100
Less amount of real and personal estate invested in
    manufacturing in New Jersey. .................... 210,000

$1,431,100

On this sum of $1,431,100 the tax was laid of one-tenth of one per cent., amounting to $1,431.10.

This computation was made upon the statements contained in the return made by the officers of the company before the receiver was appointed, and is, in all respects, in conformity with such return.

The receiver, in this suit, contends that the company is not liable to the tax in question, for the reason that it had at least fifty per cent. of its capital invested in business carried on within this state, and was, therefore, exempt from this taxation by force of the proviso above referred to.

The facts upon which this contention rests are quite complicated. A corporation called the Domestic Machine Company was organized in 1870, under the general manufacturing laws of the State of Ohio. The Ohio company acquired

a large manufacturing plant in the city of Newark, which was operated for the manufacture of sewing machines. A corporation called the Domestic Manufacturing Company was incorporated under the laws of this state by a certificate filed May 3d, 1881, with a capital of $200,000. This company was organized by parties interested in the Ohio company, by the authority of the board of directors of that company, as a matter of convenience for the transaction of its business. Shortly after the organization of the Domestic Manufacturing Company in this state, the Ohio company transferred to it its entire manufacturing plant, then located at Newark, consisting of its tools, machinery and fixtures and materials, manufactured, unmanufactured and in the process of manufacture, but not including its real estate in Newark, which was purchased by the Ohio company, and title taken in the name of Eli J. Blake, as trustee for the Ohio company. The consideration of this transfer was one thousand nine hundred and eighty shares of the capital stock of the manufacturing company, which were issued to the Ohio company, being all the capital stock of this company except twenty shares held by individuals.

The Domestic Sewing Machine Company, with respect to which this assessment was made, was incorporated under the laws of this state by a certificate filed April 3d, 1891, with a capital of $2,000,000, for which capital, stock has been issued and is outstanding to the amount of $1,641,100. The certificate of incorporation states the objects for which this company was organized to be the manufacture and sale of sewing machines   *   *   *   and the establishing of agencies in all parts of the United States and Europe for the sale and disposition of the manufactured product of the company. The name by which this company was incorporated was "The United Domestic Sewing Machine Company." The corporate name was afterwards changed to "The Domestic Sewing Machine Company." Soon after the latter company was incorporated the Ohio company transferred to the new company, by a bill of sale dated April 22d, 1891, all the real

estate, leaseholds, patents, licenses, shop-rights, trade-marks, copyrights, merchandise and good will, accounts, furniture, fixtures, &c., together with all the assets owned by it or to which it was in any way entitled, valued at $564,901.61, together with one thousand nine hundred and eighty shares of the stock of the Domestic Manufacturing Company, valued on the books of the Domestic Sewing Machine Company at $930,571.39, for the net sum of $1,500,000, payable in the stock of the new company at par. After this transfer the business was carried on by the new company at Newark.

The situation after the transfer to the Domestic Sewing Machine Company by the Ohio company appears to be this: Two corporations organized under the laws of this state, the Domestic Manufacturing Company and the Domestic Sewing Machine Company, the former being the owner of the plant, machinery and fixtures conveyed to it by the Ohio company, the latter being the owner of the assets of the Ohio company which that company owned in April, 1891, and also of one thousand nine hundred and eighty of the shares of the Domestic Manufacturing Company held by the Ohio company, and the title to the lands, which stood in Blake's name.

The facts appearing in the statement agreed on with respect to the course of business between the two companies are these: The Domestic Manufacturing Company manufactured all the Domestic sewing machines that were made and did no other business. The Domestic Sewing Machine Company sold the product of the factory, collected the proceeds of the sales and established agencies for these purposes. Each of the two corporations had some of the same persons in its board of directors. The business of the manufacturing of sewing machines by the manufacturing company was carried on for the benefit of the stockholders of the sewing machine company. The Domestic Sewing Machine Company purchased all the materials that were used by the manufacturing company in the manufacture of sewing machines, furnished all the money to pay for all the labor that was employed in the factory of the manufacturing company, ordered the kinds

and qualities and number of the machines that were to be manufactured by the manufacturing company, and delivered the same on its order to its own agents for sale. The prices charged by the manufacturing company to the sewing machine company for the finished product of the factory were so adjusted as to enable the manufacturing company to declare a dividend of ten per cent. on its capital stock annually. By the books of account of the two corporations, it appeared that there was a system of keeping accounts between them in which all the supplies and cash furnished by the Domestic Sewing Machine Company were credited to it and debited to the manufacturing company, and all the manufactured product delivered from the factory was credited to the manufacturing company and debited to the sewing machine company, but in making up the trial balances on the books of the sewing machine company, the whole property, real and personal, was treated as belonging to the sewing machine company, and as if the manufacturing company did not exist.

The facts on which the prosecutor relies to show that the company is exempt from taxation, are these: That the real estate belonging to this company, but standing in Blake's name, is valued on the books of the company at $237,223, and that the manufacturing plant, standing in the name of the Domestic Manufacturing Company, stood on the books at a valuation of $823,172, and that the receiver, in his inventory, appraised the manufacturing plant at $607,904.

It will be observed that, in the taxation in the city of Newark, for 1892 and 1893, the real estate of the company was assessed at $110,000 and its personal estate at $100,000, valuations which agree exactly with the valuations returned by the company's officers to the state board of assessors, on which this assessment was made; and that the manufacturing plant is the property of the Domestic Manufacturing Company, in which the Domestic Sewing Machine Company has no interest, except as the owner of one thousand nine hundred and eighty shares of the capital stock. And if any deduction should be made from the company's capital stock, issued and

outstanding, for the value of its real and personal estate used in manufacturing, such deduction should not be made on the basis of the figures appearing on the company's books, but from an actual estimation of capital *bona fide* used for that purpose.

The facts set out in the state of the case agreed on show that this company was a manufacturing company carrying on business in this state, within the decision of *Phonograph Company* v. *Board of Assessors,* 25 *Vroom* 430. Indeed, the board of assessors so treated the company in making the assessment. The contested question is whether the investment of its capital, in manufacturing business in this state, is adequate to exempt the company from all taxation under the proviso in the act.

By the statute by which these taxes are imposed, corporations of the class of this company are required to make return to the board of such information as may be required to carry out the provisions of the act, and any officer required by the act to make a return, for a false statement, is declared to be guilty of perjury. The board required of this company such information, and, in compliance with such request, a statement was returned, signed by the secretary, in which the amount of capital invested in manufacturing in New Jersey was set out to be $210,000. The assessment was made in accordance with the statement returned. An assessment made on a statement returned in compliance with the statute should be a finality, and not be set aside or disturbed unless it be overcome by the most satisfactory proof that it is erroneous in fact. If this suit was prosecuted by the company, it would not be allowed to gainsay the return of its officer, unless on proof of conduct on his part in fraud of the company.

The counsel of the receiver urges with earnestness that the return was made by the secretary when the company was insolvent and in danger of a receivership, which the managers of the company were struggling to avoid, and that this writ is being prosecuted in the interest of its creditors. He therefore asks that this assessment be subjected to further investi-

·gation, in the mode provided for by the act of 1881. *Rev. Sup., p.* 602. There is much force in this argument. The return was made May 3d, and the receiver was appointed within less than a month thereafter. Rejecting the figures appearing on the company's books, these facts appear: The sewing machine company owned all the stock representing the capital of the manufacturing company, of $200,000, except twenty shares held by individuals; it purchased all the materials used in manufacturing, and furnished the money to pay for all the labor employed in manufacturing.

Without intimating any opinion as to the effect of the facts that appear in the state of the case, we think enough appears to justify further investigation at the instance of the creditors of this insolvent corporation. But we think that the better course will be to let this case stand over for, say, thirty days, to the end that the prosecutor may take further testimony, or make an application to the board of commissioners, under the act of March 1st, 1888 (*Pamph. L., p.* 118), as he may be advised.

It is so ordered.