MARTIN ROSENBAUM, PLAINTIFF IN ERROR, v. UNITED STATES CREDIT SYSTEM COMPANY, DEFENDANT IN ERROR.

R. entered into a written agreement under seal with C., a stock corporation, to serve it as its general agent for a term of years, in consideration of a commission to be paid him upon the amount of business he should procure for it. He bound himself to procure a certain amount of business each year, and to provide an office and employes at his own expense. He fully performed his part of the contract, at considerable expense, for more than a year, when C. became insolvent, and, at the instance of the commissioner of banking and insurance, proceedings were instituted to have it so adjudged, and to have a receiver appointed for it, pursuant to the provisions of the act concerning corporations, approved April 7th, 1875. On the 23d of August an order to show cause was made by the chancellor requiring C. to show cause why it should not be adjudged to be insolvent, and why a receiver should not be appointed for it, and in the meantime it was restrained by the order from collecting or paying out moneys and from assigning its assets, and a temporary receiver was appointed to take charge of its assets,

and then it failed and refused longer to continue the performance of its contract with R. On September 4th, C. was adjudged to be insolvent, and a receiver was appointed for it, but no injunction was issued; On October 2d, the chancellor forfeited C.'s charter, except so far as it should be retained for the purpose of the collection and distribution of C.'s assets. R. brought suit at law against C. by permission of the chancellor, in order that a jury might ascertain whether there was a breach of the contract on the part of C., and, if so, the amount of R.'s damages. In framing an issue at law, C. pleaded in bar, the proceedings in insolvency above stated. That plea was demurred to. *Held*, (1) that there was a breach of covenant upon the part of C., and (2) that the matters pleaded do not bar recovery by R. of damages for the breach to the end of the term contracted for, and consequently that the demurrer should have been sustained.

[*Submitted March* 25*th*, 1898 ; *decided June* 20*th*, 1898.]

On error to the Supreme Court. For opinion of the Supreme Court, see 31 *Vroom* 294.

The plaintiff below and here seeks damages for breach of covenant for agency between him and the defendant, an insolvent corporation of this state.

On the 1st of December, 1892, by agreement in writing under seal, it was stipulated that the plaintiff should become and be the agent of the defendant, for the State of Massachusetts, for the term of five years thence next ensuing, in procuring applications for certificates of indemnity against excess of losses from credit, and in collecting and receiving all fees and premiums for certificates of indemnity issued upon applications therefor procured by him. The plaintiff was to secure new business for the company at the rate of at least $125,000 each three months, for the first three years, and was to have not less than $1,000,000 of business each of the last two years. He was also, at his own expense, to establish and maintain an office in the city of Boston, and employ and pay agents and other assistants sufficient in number to enable him to fully execute the contract upon his part. He was to be paid a stipulated sum per thousand dollars of guarantee issued by the company at his instance, upon receipt by the company of the premiums therefor.

The declaration alleges that this contract was broken by the defendant on the 23d of August, 1894, and from thenceforward by the defendant's ceasing to employ the plaintiff, without fault upon his part, and that he has suffered damage by deprivation of profits from the agency, and by loss of value in the furniture of the office established by him, and otherwise.

Among other pleas filed by the defendant was this: That on the 23d of August, 1894, in a suit in the Court of Chancery of New Jersey between the commissioner of banking and insurance and the defendant, the latter, by the court's order, was required to show cause before it, on the 4th of September then next, why an injunction should not issue and a receiver be appointed pursuant to the statute in such case made and provided, and that it and its agents were meanwhile required to desist and refrain from collecting or receiving any money owing to the defendant, and from paying out any money, and from selling, assigning or transferring any of its property; that on the 4th of September, 1894, it was adjudged by the Court of Chancery that the defendant was insolvent, and that it had suspended its ordinary business for want of funds to carry on the same, and that it was not about to resume its business in a short time with safety to the public and advantage to its stockholders, and that a receiver be appointed to take its assets and perform the duties imposed upon him by the act concerning corporations and its supplements; that on the 2d of October, 1894, by another order, the same court decreed that the charter of the defendant be and the same thereby was declared forfeited and void, except for the purpose of collecting the property and assets of the defendant, selling the same and distributing the proceeds of sale among the creditors and stockholders of the defendant, and that in pursuance of such orders, the defendant, on the 23d of August, 1894, and from thence until the present time, ceased to transact business, and ceased to employ the plaintiff as its agent, which is the breach of covenant by the plaintiff in his declaration alleged.

The plaintiff demurred to this plea, and the Supreme Court overruled the demurrer. Upon this action of the Supreme Court error is assigned.

For the plaintiff in error, *Cortlandt Parker, Jr.*

For the defendant in error, *Howard W. Hayes.*

The opinion of the court was delivered by

THE CHANCELLOR. The first question presented is whether there was a breach of the contract upon the part of the defendant.

In the case of *People* v. *Globe Mutual Life Insurance Co.*, 91 *N. Y.* 174, upon which the opinion of the Supreme Court relies, both parties to the contract, the insurance company and its agent, were restrained by injunction, at the instance of the attorney-general, from the further prosecution of the business of the company and the exercise of any of its corporate franchises; also a receiver was appointed and the corporation was dissolved, and it was held that action by both the contracting parties was paralyzed by the injunction so that neither could put the other in the wrong, and there could be no breach of the contract.

The case before us differs from that. In this case the suspension of the business of the company was in August, and the forfeiture of the charter was in the October following. The only injunction was that which was contained in the order to show cause, of the 23d of August, which forbade the contraction of debts, the collection of money due to the defendant and the assigning of the defendant's assets, but did not restrain the defendant from exercising its franchises, or the plaintiff from continuing to procure and forward applications for guarantee, and the defendant from considering whether the guarantee desired should be issued. By its terms it was to continue in force only until the 4th of September. On the last-named day there was an adjudication of insolvency and an appointment of a receiver, but no continuance of the injunction or the issuance of another in its stead.

The statutes nowhere provide that a mere adjudication of insolvency and appointment of a receiver shall take from the corporation its right to transact business. The practical effect of the insolvency and receivership would probably be the stoppage of business, but the right to continue would not be taken away. The chancellor might have issued an injunction to restrain the defendant and its agents from exercising any of the privileges or franchises of the defendant (*Gen. Stat.*, p. 919, § 70), but it does not appear that he did so. Putting the corporation in charge of the receiver did not work its dissolution.) *Kirkpatrick* v. *Board of Assessors*, 28 *Vroom* 53. It is then apparent that prior to October 2d, 1894, the defendant may have broken its covenant with the plaintiff.

The second and broad question in the case is whether the forfeiture of the charter will bar the plaintiff's recovery of damages for the term of the contract unexpired at the date of that forfeiture.

Following the reasoning of the New York Court of Appeals in *People* v. *Globe Mutual Life Insurance Co.*, *supra*, the Supreme Court looked upon the contract as one merely for skilled personal service and treated the insolvency of the defendant and forfeiture of its charter as analogous to the death of the master of such a servant, which, as an implied condition in the contract, terminated it.

The Court of Appeals of New York carried the doctrine of implied condition in the contract still further. Judge Finch, in the case last cited, said : " What had happened was a dissolution of the contract by the sovereign power of the state, rendering performance on either side impossible. And this result was within the contemplation of the parties and must be deemed an unexpressed condition of their agreement. One party was a corporation. It drew its vitality from the grant of the state, and could only live by its permission. It existed within certain defined limitations, and must die whenever its creator so willed. The general agent who contracted with it did so with knowledge of the statutory conditions,

and these must be deemed to have permeated the agreement and constituted elements of the obligation."

The judge admits that this implication will not exist if it shall be made to appear that the corporation was culpably responsible for the intervention of the state.

It appears to us that both these implied conditions are forced, or at least forced in their application to cases in this state similar to the case now considered. (It appears to us that the material fact that the corporation defendant is a stock company, and that its capital stands as a trust fund for the payment of its debts, is lost sight of.) Such a company may become insolvent, and its charter may be forfeited when its assets may be more than sufficient to pay its debts. ( Everyone who deals with such a corporation does so in view of the trust fund its capital provides, and the security that fund is intended to afford. \ The stockholders who provide the fund invite confidence because of it, that through such confidence their venture may be profitable to them. )The mere statement of this situation makes conspicuous the injustice of any course of reasoning which will return to the stockholders their capital before satisfaction of all losses induced by faith in it shall be made. The state creates corporations and requires of them the provision of such a trust fund, and when it destroys their corporate existence, natural justice requires that it shall provide for distribution of the fund so that no part of it shall be returned to those who offer it as security for the action of others, until the latter shall have all the protection against loss in their undertaking that it is capable of affording. We think that our statute undertakes this duty. It provides that the assets of an insolvent corporation shall be collected and sold, and that the proceeds of sale shall be divided among the creditors of the corporation (*Gen. Stat., p.* 920, § 72), in proportion to the amount of their respective debts, including debts not due, and making proper rebate, and that the surplus only shall go to stockholders. *Gen. Stat., p.* 923, § 80. The general scheme of the statutes contemplates the ascertainment and payment of all just claims

against the corporation. The terms "creditor" and "deb "
are not used in a narrow, restricted or technical sense. By
its provision for reference of a claim to a jury (*Gen. Stat.,*
*p.* 922, § 78; *Pamph. L.,* 1896, *p.* 302, § 77), machinery
whereby the amounts of claims sounding in unliquidated
damages may be ascertained is provided, and such claims are
brought within the term "debts." We agree with the view
taken in the Court of Chancery with respect to the liberality
with which the statutes are, in this respect, to be construed.
*Spader* v. *Mural Decoration Manufacturing Co.,* 2 *Dick. Ch.*
*Rep.* 18; *Bolles* v. *Crescent Drug and Chemical Co.,* 8 *Dick.*
*Ch. Rep.* 615.

It is considered that the existence of this trust fund, and
the evident policy of the state with reference to it, forbid
the application of the rule invoked by the Supreme Court
under the analogy it deemed to exist. By the terms of the
decree which forfeits the defendant's charter, the corporation
is not dead, so far as the ascertainment of its obligations and
their satisfaction are concerned. The record shows that this
suit is brought by permission of the Chancellor virtually as a
feigned issue out of Chancery in the insolvency proceedings,
to aid in the ascertainment of an obligation or debt, and con-
sequently the distribution of the assets of the corporation.
It is a step in the administration controlled by the statute.

The demurrer to the plea should have been sustained, hence
the judgment below will be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, COLLINS, DIXON,
GUMMERE, LUDLOW, ADAMS, BOGERT, HENDRICKSON,
NIXON, VREDENBURGH. 10.