### In re MARINE CONST. & DRY DOCK CO.

#### (Circuit Court of Appeals, Second Circuit. April 3, 1904.)

#### No. 195.

1. BANKRUPTCY—MANUFACTURING CORPORATION.

A corporation incorporated to do a general manufacturing business, and to manufacture, construct, repair, equip, and buy and sell ships and vessels of all kinds, and parts and furniture therefor, and which since its organization has carried on the business of constructing completed boats, and parts and furniture for vessels, such as boilers, masts, tanks, desks, tables, etc., for the most part made from the raw material in its own shops, is principally engaged in manufacturing pursuits, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and subject to proceedings in involuntary bankruptcy.

Petition for Revision of Order of the District Court of the United States for the Eastern District of New York.

This cause comes here upon a petition to review an order denying a motion to vacate proceedings in bankruptcy against the corporation. It is a New York corporation, incorporated to do a general manufacturing business, without limitation thereof—to manufacture, construct, repair, equip, buy, sell, lease, mortgage, or otherwise deal in and with ships, vessels, and boats of every kind, together with all materials, articles, tools, engines, boilers, appurtenances, apparel, and furniture of every kind entering into, or suitable or convenient for, the manufacture, construction, repair, equipment, operation, or maintenance thereof.

R. J. Mahon, for petitioners.

C. P. Moses, for respondent.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The motion is made on the ground that the corporation was a shipbuilder, and therefore not engaged in manufacturing, within the intent of Bankr. Act July 1, 1898, c. 541, § 46, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]. These authorities are mainly relied on:

People v. N. Y. Floating Dock, 92 N. Y. 488. This case holds that a corporation incorporated for the purpose of constructing, using, and providing one or more dry docks, or wet docks, or other conveniences and structures for building, raising, repairing, and cop-

¶ 1. What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.

pering vessels, was not within the provisions of an act which exempted "manufacturing corporations" from certain taxes. The court says:

"Its main object, evidently, is building, raising, repairing, and coppering vessels. The principal portion of the work which the corporation is authorized to perform relates to the improvement of vessels which have already been constructed, and not to the construction of the same, and, taking all the parts enumerated together, they cannot be considered as embraced within the term 'manufacturing.'"

In The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937, the Supreme Court held that a screw steam yacht of 372 tons was "not dutiable under the tariff act, and not properly included in the phrase 'manufactures of iron or wood.' A ship is doubtless constructed of manufactured articles, which, if imported separately, would be the subject of duty, but which, put together in the form of a ship, are taken out of the class of 'manufactures.'"

In Palmer's Shipbuilding & Iron Co. v. Clayton, L. R. 4 Q. B. 209, it was held that a ship was not an "article," within the meaning of an act forbidding the employment of children to labor in the manufacture of articles or parts of articles, but that an iron plate was an article of metal, even though used in shipbuilding, and the shaping of the plate was a part of the manufacture.

"The susceptibility to bankruptcy of a corporation does not depend upon its charter." Matter of Quimby (D. C.) 121 Fed. 139.

The language of section 4b is "any corporation engaged principally in manufacturing * * * pursuits," and that phrase has been recently construed by the Court of Appeals of the First Circuit in White Mountain Paper Company v. Morse & Co. (Oct. Term, 1903) 127 Fed. 643. The corporation in that case was organized to manufacture pulp and paper. It had expended a very large amount of money in acquiring lands and erecting buildings necessary and suitable, and intended to be used, for that purpose and no other. It had under construction a pipe line to give power to its mills, had cut a large quantity of timber, and sawed the same into four-foot lengths, and floated part of it some 50 miles down the Saco river, but no pulp or paper had ever been manufactured and sold by it. The court said:

"It is difficult to see how it can be said that the actual getting out of the four-foot lengths of timber suitable for use in the manufacture of pulp, with a design of so using them, was not, in every possible view of the expressions involved, manufacturing, although in its earlier stages. But even this is a narrow aspect, to which we are not limited. The corporation is a business corporation. It undertook to acquire lands and construct mills for a certain purpose, and that purpose must be presumed to be one within the four corners of its organization. It had undertaken a business, and, in view of its charter and of what facts we have stated, that business could be no other than the business of manufacturing. It was not organized for the purpose of constructing mills, so that it cannot be said that its business was that of constructing mills. It was permitted to construct mills only as incidental to its authorized powers, which, so far as this case is concerned, were those of manufacturing. The question being purely a question of fact, and the case addressing itself on that question so strongly to the ordinary mind, it is hardly worth while to pursue it further; so that we are bound to hold that, on any fair construction of the statute, and in every application of the facts as applied thereto, the corporation was not only principally, but wholly, engaged in

manufacturing, although in the early stages of it. To do otherwise would be equivalent to holding that one who had taken his whole capital and employed it loading ships in foreign ports with cargoes destined for his home, had engaged proper stores for warehousing and selling the goods when they arrived, had employed clerks and provided all the incidentals of the business, had abandoned all other enterprises in favor of his purpose to continue indefinitely in the purchasing of goods abroad, bringing them home and there disposing of them, was not principally engaged in importing while the merchandise was afloat, because, according to the construction of the customs statutes, articles purchased abroad are not imports until they have arrived within the domestic harbors for which they are intended."

The record in the case at bar shows that since its organization the corporation has constructed in all 84 boats, ranging in length from 10 to 34 feet, and weighing from 100 to 2,500 pounds. All the various parts of the boats, with scarcely any exceptions, are themselves manufactured from the raw material by the company in its own shops into completed parts, except very small articles, such as blocks, nails, hardware, etc. It has also made a number of boilers, blocks, masks, booms, gaffs, jaws, etc., which were entirely complete within themselves, and intended for use in repair work. A large amount of furniture, such as chairs, desks, tables, bookcases, etc., and a large amount of paint, and a large number of copper tanks, have been manufactured from the raw material in the company's shops, and sold by the company in the usual course of business. In view of these facts, we find no difficulty under the authorities in reaching the conclusion that the corporation was "principally engaged in manufacturing pursuits," within the meaning of section 4b.

The order of the District Court is affirmed, with costs.