## BUFFALO REFRIGERATING MACHINE COMPANY v. STATE BOARD OF ASSESSORS.

Submitted November Term, 1904—Decided February 27, 1905.

A corporation whose sole asset is a contract with a second corporation for the manufacture and sale of machinery and a division of profits, the control of the business being entirely in the hands of the latter, and the risks of manufacture being its risks, is not entitled to the exemption from the state franchise tax allowed to corporations whose capital stock to the extent of fifty per cent. is invested in manufacturing carried on within this state.

On *certiorari.*

Before Justices DIXON and SWAYZE.

For the prosecutor, *Edward A. & William T. Day.*

For the state, *Robert H. McCarter,* attorney-general.

The opinion of the court was delivered by

SWAYZE, J.   The prosecutor claims exemption from the franchise tax imposed by the state upon the ground that at least fifty per cent. of its capital stock is invested in manufacturing carried on within the state.   The question is one

of fact. Prior to the incorporation of the Buffalo Refrigerating Machine Company, a copartnership was engaged in erecting and selling refrigerating plants and apparatus at Buffalo, New York. Their only property consisted of patterns, drawings and system of refrigerating and machines for the manufacture of ice. On January 6th, 1903, a contract was made between the Buffalo company and the Marine Engine Company, by which the Buffalo company appointed the Marine company sole manufacturer of machinery of the Buffalo company's designs and patterns, and agreed to deliver to the Marine company all of its existing machinery, tools, designs and patterns, and assigned to the Marine company an equal interest in the good will of the business; the Marine company agreed to manufacture and to install the machinery at cost, to increase its manufacturing facilities for the development of the business as it might determine, to employ one of the partners as technical manager of the ice-making department and to maintain a New York office as selling headquarters, and the Buffalo company agreed to conduct the sales and technical departments, to develop and increase the sales of the machinery at prices satisfactory to both parties, but all customers were to be approved by the Marine company and all billing and collecting was to be done by the Marine company. The profits of the business were to be divided equally between the Marine company and the Buffalo company. The agreement recited that the Buffalo company was not the manufacturer of the refrigerating machinery. The corporation known as the Buffalo Refrigerating Machine Company was organized in April, 1903, in pursuance of an agreement made April 21st, 1903, between the Marine company and the copartners in the Buffalo business. That agreement recites that the copartners, upon the organization of the company, were to assign the good will of the present business and their interest in the contract of January 6th, but were not to convey their title to their designs and patterns. The Marine company agreed to assign to the new corporation its rights under the contract of January 6th, including its interest in

the good will of the business and its right to one-half of the net profits, but the agreement expressly provides that it was not intended to modify the contract of January 6th so far as that required the Marine company to manufacture.   Upon the organization of the new corporation the Marine company, by written assignment transferred to the present prosecutor all its rights and advantages under the contract of January 6th, including its interest in the good will of the business and its right to one-half the net yearly profits.   The assignment recites that it was not intended to modify the contract so far as the same required the Marine company to manufacture thereunder.   At the same time the copartners assigned to the present prosecutor their right, title and interest in the good will of the business and in the contract of January 6th, but the assignment expressly provided that it was not intended to convey the title of the copartners to their designs and patterns.

This summary of the facts show that the only asset of the prosecutor is the contract of January 6th, 1903.   It owns no designs, patterns or machinery.   The manufacture at Harrison is carried on with the designs and patterns formerly and still belonging to the copartnership, and the whole scheme is evidently a mere arrangement for a division of profits by means of dividends upon the capital stock of the prosecutor instead of a division as the agreement originally provided between the Buffalo copartners on the one side, and the Marine company on the other.

The agreement of April 21st, 1903, which was preliminary to the organization of this corporation, recognizes that this was the object of the organization of the corporation; it recites that the provisions of the agreement of January 6th shall remain and be carried out "except as modified by this agreement with said Marine company, to take in place of its half interest of the profits of the business, as provided by said agreement of January 6th, 1903, one-half of the said capital stock of the new company and the dividends that may be declared thereon."

It is claimed that the effect of the arrangements as above stated was to make the Marine company the manufacturing agent of the Buffalo copartnership and of the prosecutor after the assignment thereto of the contract, but the contract of January 6th gives no control of the business to the Buffalo copartnership; on the contrary, the increase of facilities for manufacture is to be determined by the Marine company, the salaries are to be paid by the Marine company, all customers to whom sales are made are to be approved by the Marine company and all billing and collecting is to be done by the Marine company. The control of the business was entirely in the hands of the Marine company and the risks of manufacture were its risks.

The case differs, therefore, from the case of *Phonograph Company* v. *Board of Assessors,* 25 *Vroom* 430, which was relied upon by the prosecutor. That case was decided upon the ground that the prosecutor controlled the manufacture of the phonographs, and the Edison company was but the instrument by which they were made. The value of the plant in that case was in the patent right, which was controlled by the prosecutor, and without which the manufacture could not lawfully be carried on. The court therefore held that the plant of the Edison company became *pro hac vice* the plant of the prosecutor.

In the later cases of *Edison Phonograph Co.,* 28 *Vroom* 520, and the *Storage Battery Co.* v. *Board of Assessors,* 31 *Id.* 66; affirmed in 32 *Id.* 289, it was held that the prosecutors had failed to sustain the burden of establishing their exemption.

We think the prosecutors in the present case have likewise failed to establish an exemption. The tax must therefore be affirmed, with costs.