CONKLIN et al. v. UNITED STATES SHIPBUILDING CO.

(Circuit Court, D. New Jersey. May 1, 1905.)

1. CORPORATIONS—INSOLVENCY PROCEEDINGS—FOLLOWING RULES IN BANK-RUPTCY.

In insolvency proceedings against a corporation in a federal court of equity, the rules in bankruptcy proceedings should be followed so far as applicable, especially where the corporation is one which might, under the present law, have been adjudged a bankrupt.

2. SAME—PROVABLE DEBTS—CONTINGENT LIABILITIES.

The surety on a bond given by an insolvent corporation, who has not been subjected to any loss or required to pay any money by reason of his liability thereon, has no claim against the corporation which is provable as a debt in insolvency proceedings for winding up its affairs and distributing its assets, merely because of the pendency of a suit against him on such bond, in which he denies liability.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insolvency, §§ 157–160.]

3. SAME—DISTRIBUTION.

While a court of equity, in administering the affairs of an insolvent corporation, will allow a claim to be proved after the expiration of the time limited by a general order for the proof of claims, and before distribution, provided it is an equitable one and the claimant is not chargeable with laches, it will not postpone the distribution indefinitely for the mere purpose of insuring against loss parties whose contractual relations with the corporation give rise to no present ascertainable debts.

In Equity. On petition of the United States Fidelity & Guaranty Company for leave to present proof of claim to receiver.

Charles L. Corbin, for petitioner.

Sherrerd Depue, for receiver of the United States Shipbuilding Company.

Robert H. McCarter, for reorganization committee.

LANNING, District Judge. On September 26, 1898, and July 14, 1902, Lewis Nixon and the petitioner, the United States Fidelity & Guaranty Company, executed certain bonds to the United States government, conditioned for the due performance of certain contracts for the building of war vessels by Mr. Nixon for the United States government. On July 20, 1901, the same parties executed two other bonds to the republic of Mexico to secure the due performance of two other contracts for building two war vessels by Mr. Nixon for the Mexican government. On September 15, 1902, the United States Shipbuilding Company, then having purchased the shipyards and property of Mr. Nixon, and assumed all his outstanding contracts, entered into a contract with the petitioner, dated that day, by which it was agreed that the United States Shipbuilding Company should be substituted as principal in the above-mentioned bonds in the place of Mr. Nixon, that that company should

indemnify the petitioner against all loss or liability by reason of the bonds, and that Mr. Nixon should be discharged from liability thereon. On October 6, 1902, and March 3, 1903, the Crescent Shipyard Company and the petitioner executed other bonds to the republic of Mexico and the United States government to secure the due performance of other contracts for the building by the Crescent Shipyard Company of war vessels for those governments. On October 29, 1902, the United States Shipbuilding Company and the petitioner executed another bond to the republic of Mexico to secure the due performance of a contract for the building by the United States Shipbuilding Company of four six-pound guns for the Mexican government. On June 30, 1903, this court, having adjudged the United States Shipbuilding Company to be insolvent, appointed a receiver for it. None of the contracts for building the above-mentioned vessels had then been completed. Some time after the appointment of the receiver, and before July 6, 1904, two suits were commenced by the republic of Mexico in the Supreme Court of New York—one against Mr. Nixon and the petitioner upon the two bonds executed July 20, 1901, and the other against the petitioner upon the bonds executed October 6, 1902, and October 29, 1902—but no judgment has yet been entered in either of those suits, nor has the amount of the liability of the petitioner, if any, upon any of the above-mentioned bonds, been in any wise ascertained or fixed. On December 15, 1903, this court made an order requiring the receiver of the United States Shipbuilding Company to notify the creditors of that company to present their claims within four months from that date. Due notice was given, and on July 11, 1904, an order was made barring all creditors who had not presented their claims within the limited time. On July 18, 1904, the petitioner prepared a claim upon a part of the above-mentioned bonds, but, through oversight, failed to deliver it to the receiver. By its petition now presented it seeks permission to prove its claim for the total amount of the penal sums of all the bonds, including the bonds of the Crescent Shipyard Company; the stock and assets of that company being, the petition alleges, the property of the United States Shipbuilding Company.

The first question presented by counsel upon these facts is whether the claim desired to be presented to the receiver is provable. It has frequently been declared in the courts of the state of New Jersey that the New Jersey statute for administering the affairs of insolvent corporations by means of receiverships is in its essential elements a bankrupt law, and that the rules to be applied to such administration should be those of the bankrupt law. State Bank v. Receiver of Bank of New Brunswick, 3 N. J. Eq. 270; Receivers v. Paterson Gaslight Co., 23 N. J. Law, 291, 292; Receivers v. Paterson Savings Bank, 10 N. J. Eq. 17, 18; Stockton v. Mechanics' Bank, 32 N. J. Eq. 169; Spader v. Mural Decoration Manufacturing Co., 47 N. J. Eq. 19, 20 Atl. 378; Frost v. Barnert, 56 N. J. Eq. 292, 38 Atl. 956. In applying these rules the New Jersey courts have nevertheless given a liberal construction to the New Jersey statutes

when considering the rights of creditors. In Spader v. Mural Decoration Manufacturing Company, supra, and in Rosenbaum v. Credit System Company, 61 N. J. Law, 544, 40 Atl. 591, the claimants, who had entered into contracts of employment with corporations for which receivers were appointed, on the ground of insolvency, before the expiration of the terms of employment, were held to have provable claims upon their contracts against the receivers, and the amounts due thereon were declared to be determinable upon issues properly framed and tried by jury in a court of law. In Lehigh & Wilkesbarre Co. v. Stevens & Condit Transportation Co., 63 N. J. Eq. 107, 51 Atl. 446, a claimant for damages resulting from a tort committed before the adjudication of insolvency, but not reduced to judgment until after such adjudication, was admitted as a creditor. In Grinnell v. Merchants' Insurance Co., 16 N. J. Eq. 283, a claimant was permitted to present his claim to the receiver of an insolvent corporation after the expiration of the time limited for the presentation of claims; he having held mortgage security for his claim, and not having been able to secure a sale of the mortgaged premises, so as to ascertain the amount of the deficiency, before the expiration of the time limited for the presentation of claims. The same rule was followed in Pattberg v. Pattberg & Brothers, 55 N. J. Eq. 604, 38 Atl. 205. In each of these cases there was, at the time when the claimant insisted upon his right to a distributive share of the assets of the insolvent corporation, an absolute, existing liability, though in some of them the amounts due had not yet been reduced to judgment or otherwise liquidated. None of these cases, therefore, is similar to the one now before me. Here the petitioner is a mere surety upon certain bonds. It is not certain that it will ever be required to pay anything on account of its suretyship. It is at the present time defending the suits brought against it in New York, and denies any liability whatever therein. Its liability upon the bonds is a contingent one, that may never become a debt. Its right is a right of indemnity out of the assets of its principal, but until it has been damnified there is no basis upon which it can ask to be indemnified. Such is the clear rule of the bankruptcy law. In Riggin v. Magwire, 15 Wall. 549, 21 L. Ed. 232, the court construed the language of the bankruptcy act of 1841, which allowed "uncertain or contingent demands" to be proven against a bankrupt's estate. It was declared that so long as it remained wholly uncertain whether a contract would ever give rise to an actual duty or liability, and there were no means of removing the uncertainty by calculation, the contract was not provable. In Dunbar v. Dunbar, 190 U. S. 340, 23 Sup. Ct. 757, 47 L. Ed. 1084, it was held that a claim founded upon an agreement by a husband to pay his wife, from whom he had secured a divorce, a certain sum annually during life or until she should marry, was not provable under the present bankruptcy act, except as to payments due at the time of the adjudication of the husband's bankruptcy.

The affairs of the United States Shipbuilding Company are to be administered in this court in accordance with the court's general

equity powers, rather than by a close adherence to the provisions of the New Jersey statute. United States Shipbuilding Co. v. Conklin, 126 Fed. 132, 60 C. C. A. 680. The object of the bankruptcy act is to secure an equitable distribution of a bankrupt's estate. The proceedings in bankruptcy are largely equitable in their nature. Equitable principles are applied. It seems, therefore, that the rules in bankruptcy proceedings, so far as they are applicable to the case now in hand, ought to be observed. Especially is this so, since the United States Shipbuilding Company was a manufacturing company (see Columbia Iron Works v. National Lead Co., 127 Fed. 99, 62 C. C. A. 99, 64 L. R. A. 645, and In re Marine Const. & Dry Dock Co., 130 Fed. 446, 64 C. C. A. 648), and, at any time within four months after this court had put a receiver in charge of its property, might have been forced into involuntary bankruptcy under the authority of section 3a of the bankruptcy act as amended in 1903 (Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 410]). Had that course been pursued, the provisions of the bankruptcy act concerning the character of claims provable against the insolvent company's estate would, without question, have had controlling authority.

But the learned counsel for the petitioner insists that when a corporation is adjudged insolvent, and its property is taken into the custody of the court for conversion into money and distribution amongst its creditors, the corporation, for all practical purposes, is dead, and that natural justice demands that parties occupying positions like that occupied by the petitioner in this case should have preserved to them a right to participate in the distribution. In order that the petitioner here may have preserved to it such a right, it is suggested that the receiver of the United States Shipbuilding Company be required by this court to retain in his hands a sum sufficient to secure the payment of a full dividend to the petitioner upon the amount it may be required to pay on each of the bonds executed by it. In other words, the proposition is that this court shall require its receiver to hold an ample fund for an indefinite period—possibly for years—out of which the petitioner may be indemnified if at some time in the indefinite future it shall suffer loss by reason of its execution of the above-mentioned bonds or any of them. No case has been referred to in which that course was pursued. In Grinnell v. Merchants' Insurance Co., supra, the claimant became bail in error for the insolvent corporation, but, when he sought to be admitted as a creditor, his mortgage security for the amount advanced by him had been foreclosed, and the deficiency due him definitely ascertained. While a court of equity, in administering the affairs of an insolvent corporation, will allow a claim to be proven after the expiration of the period limited by a general order for the proof of creditors' claims, and before distribution, provided the claim is an equitable one and the claimant is not chargeable with laches, it will not postpone the distribution indefinitely for the mere purpose of insuring against loss parties whose contractual relations with the corporation give rise to no

present ascertainable debts. The application of a rule like that now proposed would in many cases tie up insolvent estates for years, and wholly abrogate the long-settled practice of requiring claims to be presented within prescribed periods. If at any time in the future, and before the assets of the United States Shipbuilding Company shall have been distributed amongst the creditors presenting provable claims, the liability of the petitioner shall be established, and the damages recoverable against it definitely ascertained and paid, the petitioner's claim may then possibly be proven, though upon this point no opinion is now expressed.

The view above taken renders it unnecessary to consider the question of laches, or the question concerning the claim against the United States Shipbuilding Company upon the bonds executed by the Crescent Shipbuilding Company, both of which questions were argued by counsel.

The order will be that the petition be dismissed.