RICHARD M. MORE ET AL., RECEIVERS FOR B. S. AYARS
  · & SONS COMPANY, RESPONDENTS, v. CHARLES G.
    RICHARDS, APPELLANT.

RICHARD M. MORE ET AL., RECEIVERS FOR B. S. AYARS
    & SONS COMPANY, RESPONDENTS, v. SIMON MILNER,
    APPELLANT.

RICHARD M. MORE ET AL., RECEIVERS FOR B. S. AYARS
    & SONS COMPANY, RESPONDENTS, v. CHARLES SIL-
    VER, APPELLANT.

Argued March 16, 1917—Decided June 18, 1917.

The defendants agreed in writing, to produce from their respective
    farms, tomatoes, of a given quality, by a certain time, and de-
    liver same to the vendee, and before the period of delivery men-
    tioned in the contract the vendee was declared insolvent, and
    receivers were appointed therefor. In a suit by the receivers
    to collect a claim against the defendants for fertilizer, which
    claims were certain in amounts and admittedly correct, the
    defendants set up by way of set-off their unliquidated demands
    against the insolvent company, for failure to receive the
    tomatoes. *Held,* (1) that being unliquidated the demands
    were not capable of set-off under the Corporation act, which
    accords the right of set-off only to claims arising out of mutual
    dealings; (2) the defendants had not perfected their right
    to sue because of failure to deliver or a tender of delivery;
    (3) the recognition of unliquidated claims not entitled to any
    legal preference against the receivers, would accord to such
    claims a preference in the distribution of the assets of the in-
    solvent company, contrary to the provisions and spirit of the
    Insolvent act.

· On appeal from the Cumberland County Circuit Court.

For the respondents, *James S. Ware, William A. Logue*
and *Walter H. Bacon.*

For the appellants, *Alvord & Tuso.*

The opinion of the court was delivered by

MINTURN, J. The respective defendants in these three suits are sued by the receivers of the B. S. Ayars & Sons Company, upon contracts, similar in form and substance, entered into between that company during its active existence with each of the defendants. The company sold the defendants quantities of fertilizer for their respective farms, and in turn entered into the agreements in question, whereby the defendants, respectively, contracted "to plant and thoroughly cultivate" and to deliver to the company specified acreages of tomatoes, of a specified quality, during the season of 1913, and to receive from the company therefor $8.25 per net ton.

The fertilizers were delivered, but the tomatoes were not, because the company, before their fruition, had become insolvent, and had gone into the hands of the present plaintiffs as receivers. The receivers brought suits to recover for the agreed price of the fertilizers, regarding which no question was made. The defendants interposed pleas of set-off, whereby they alleged that they were damnified by the failure of the company to execute its contract, by accepting delivery of the tomatoes, to an amount greater than the agreed price of the fertilizers, which damage they claim should present a legal set-off to the plaintiffs' claim.

No question is made that the tomatoes were raised, and that in every essential, but the fact of delivery, the defendants complied with their contract. Upon this assumption a jury was dispensed with at the Circuit, and by consent of counsel the legal questions arising upon the facts were submitted to the court.

It was conceded that the tomatoes matured from day to day after August 1st, 1913, and that the receivers were appointed July 21st, 1913, and that on July 28th, 1913, a restraining order was made by the Court of Chancery enjoining the company from transacting business except through its receivers.

It was also in evidence that the receivers did not operate the company's canning factory. Upon these facts the court

found for the plaintiffs, from which determination these appeals are taken.

It is argued that the Ayars company, in its sale of fertilizers, was the agent of another company, known as the Tygest Company. The trial court, however, found it unnecessary to interpolate this fact into the issue, but disposed of the questions upon the concrete inquiry, whether under the facts stated an action will lie against the receivers.

It is apparent that when the receivers were appointed these contracts had not matured, and therefore no delivery had been made, and that no tender of the tomatoes was thereafter made. The case, therefore, is within the narrow compass of an unliquidated demand, which the defendants seek to offset against a distinct independent and liquidated demand, which the plaintiffs, as receivers, are called upon *virtute officii* to collect for the purpose of administering the affairs of an insolvent corporation, whose liability for the claim in question at the time of adjudicated insolvency was not fixed.

The manifest effect of a judgment against the receivers, under the circumstances, is to single out these defendants among the creditors, and concede to them a preference upon claims in nowise distinguishable from the great body of unpreferred claims, and accord them a preferential status, conspicuously opposed to the letter and spirit of the law which liquidates such claims upon a basis of equality, in the distribution of assets. *Comp. Stat.*, p. 1652, § 86; *Lehigh, &c., Co.* v. *Stevens Co.*, 63 *N. J. Eq.* 107; *Doane* v. *Millville Insurance Co.*, 45 *Id.* 274.

It is equally obvious, upon well-settled principles, that in order to acquire a legal status for the purpose of maintaining their suit against the receivers, and of putting them in the category of vendees, or the legal representatives of vendees, who have repudiated their contracts, the defendants should have tendered performance or delivery of the subject-matter of the contracts, after the period provided in the contracts had arrived. *Florence Mining Co.* v. *Brown*, 124 *U. S.* 385; *People* v. *Globe Mutual Insurance Co.*, 91 *N. Y.* 174.

It is to be observed that the Corporation act, section 66, provides that in cases of mutual dealings between the corporation and its creditor, just set-offs may be allowed "according to law and equity."

The situation here disclosed presents no appearance of mutual dealings, upon which the receivers might have exercised their judgment, in dealing with the claims, upon the basis of mutual set-offs, as contemplated by the statute; and in this connection it is also to be observed that the claims in question were not presented to the receivers upon oath, for administration as required by section 76 of the Chancery act, which requires every claim against an insolvent corporation to be presented to the receiver, in writing, under oath.

Quite obviously, therefore, the effort is to obtain by judgments against the receivers a legal status which will accord to the defendants a preference in the distribution of corporate assets, superior to the status accorded by law to the ordinary claimant.

The case is not like *Rosenbaum* v. *Credit System Co.,* 61 *N. J. L.* 543; 40 *Atl. Rep.* 591, where no injunctive order restrained the defendant from transacting business, and permitted the plaintiff to continue his services under the receivership, thereby conceding to him a legal status which is not presented by the record before us.

The result of these considerations is that the judgment of the trial court must be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, WILLIAMS, TAYLOR, GARDNER, JJ.   10.

*For reversal*—BLACK, WHITE, HEPPENHEIMER, JJ.   3.