THE PEOPLE OF THE STATE OF NEW YORK *v.* THE GLOBE MUTUAL LIFE INSURANCE COMPANY.

Where a registered policy life insurance company which has entered into a contract with a general agent for his services for a specified term at a stipulated salary, before any breach of the contract on its part, is restrained from further prosecuting its business or exercising its corporate franchises by order of the court, and a receiver of its assets is appointed in proceedings under the insurance law (§ 7, chap. 902, Laws of 1869), the agent has no valid claim upon the fund in the hands of the receiver for damages for alleged breach of the contract, because of the discontinuance of the employment: at least, in the absence of evidence that it was some fault of the company which induced the superintendent of the insurance department to make the certificate upon which the attorney-general acted. There is, in such case, no breach on the part of the company as performance is prevented, and the contract dissolved by the action of the State.

The difference between the position of agents and that of policy-holders pointed out.

*It seems* that as between the company and one of its officers thus contracting with it, its dissolution by virtue of such proceedings is to be deemed the independent act of the State, and not the act of the corporation, whatever may have been the cause prompting the act. The officer so contracting takes the risk of any act or neglect on the part of the other officers which tends, under the law, to produce dissolution.

(Argued December 12, 1882; decided January 23, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial department, entered upon an order made December 1, 1882, which affirmed an order of Special Term dismissing a claim presented by James C. Mix upon the fund in the hands of the receiver of the defendant.

The facts were stipulated substantially as follows:

Defendant was a registered policy life insurance company, organized under chapter 902, Laws of 1869. In December, 1876, said Mix entered into its employment as general agent, under a contract by which he was to receive a specified annual salary for a term of not less than five years. In May, 1879, the superintendent of the insurance department made the certificate provided for by section 7 of said act, and delivered it to the attorney-general, who thereupon commenced this action and obtained an order therein restraining defendant, its officers, etc., from the further prosecution of its business or the exercise of any of its corporate franchises. A receiver of the corporation was duly appointed and it was dissolved. Mix continued in the discharge of his duties under the contract until June 15, 1879, when he was notified by the receiver of his appointment, and of the dissolution of the company.

*Edward C. James* for appellant. This claim is provable against the assets. (*People* v. *Security L. Ins. Co.*, 78 N. Y. 115, 125; *Lewis* v. *A. M. L. I. Co.*, 61 Mo. 534; *In re Eng. J. S. B'k, Yelland's Case*, L. R., 4 Eq. 350; *In re L. C. Co., Clark's Case*, L. R., 7 Eq. 550; *In re L. & S. B'k, Logan's Case*, L. R., 9 Eq. 149; *In re E. & S. M. Ins. Co., McClure's*

*Case,* L. R., 5 Ch. App. 737 ; *In re P. F. C. Co., Dean and Gilbert's Case,* 41 L. J. Eq. [N. S.] 476 ; *In re H. G. Co.,* L. R., 1 Ch. App. 77 ; Laws of 1869, chap. 902, § 8 ; *Att'y-Gen.* v. *A. M. L. Ins. Co.,* 77 N. Y. 336–339, 340 ; *Att'y-Gen.* v. *N. A. L. Ins. Co.,* 80 id. 152–154 ; *People* v. *Nat. Ins. Co.,* 82 id. 287.) The insolvency of the company entitles a stockholder to an injunction restraining the prosecution of its business. (*Osgood* v. *Maguire,* 61 N. Y. 524 ; *Lewis* v. *Atlas M. L. Ins. Co.,* 61 Mo. 534.) The performance of a contract will not be excused for any cause against which the contracting parties might have provided, except the act of God, or a true *vis major,* for which the party in default is in no way to blame. (*Harmony* v. *Bingham,* 12 N. Y. 107–8 ; *Tompkins* v. *Dudley,* 25 id. 272.) Even sickness and death will not in all cases relieve the party from making compensation in damages. (*Clark* v. *Gilbert,* 26 N. Y. 284 ; *Danolds* v. *State,* 14 Weekly Dig. 437.) Claimant was entitled to recover as damages the agreed salary from the last payment to the expiration of the five years with a rebate of interest from the dates when said sums became due to June 1, 1879 ; and should be charged with what he has earned during said period, and also with a small indebtedness owing by him to the company. (*Howard* v. *Daly,* 61 N. Y. 371–378 ; 82 id. 287 ; L. R., 4 Eq. 350 ; 7 id. 450 ; 9 id. 149.)

*Geo. W. Wingate* for receiver. All contracts for personal services are made upon the implied agreement that both the contracting parties will continue to live and do business, and the contract is terminated by the death or sickness of either the employer or the employed, the servant being merely entitled to his services to that date. (*Farrows* v. *Wilson,* L. R., 4 Com. Pleas, 744 ; *Wolf* v. *Howes,* 24 Barb. 174 ; *Fahy* v. *North,* 19 id. 341 ; *People* v. *Manning,* 8 Cow. 297 ; *Carpenter* v. *Stevens,* 12 Wend. 589 ; *Fenton* v. *Clark,* 11 Vt. 557 ; *Fuller* v. *Brow,* 11 Metc. 440 ; *Beebe* v. *Johnson,* 19 Wend. 502 ; *Ryan* v. *Dayton,* 25 Conn. 188 ; *West* v. *Boylston,* 4 Pick. 101 ; 10 Am. Juris. 250–253 ; *Ferrington* v. *Greene,*

7 R. I. 589, 594; Story on Partnership, § 341; *Tasker* v. *Shepherd*, 6 H. & N. Exch. 575; *Charnley* v. *Winstanley*, 5 East, 266; Chitty on Cont. [11th Am. ed.] 1076; *Walker* v. *Tucker*, 70 Ill. 527; *Stewart* v. *Loring*, 5 Allen, 306; *Knight* v. *Bean*, 22 Me. 531; *Spaulding* v. *Rosa*, 71 N. Y. 40; *S. C.*, 27 Am. Rep. 7; *Taylor* v. *Caldwell*, 3 B. & S. 826; *Sturges* v. *Vanderbilt*, 73 N. Y. 390; *Munma* v. *Potomac Co.*, 8 Pet. 286; *Merrill* v. *Suffolk B'k*, 31 Me. 57; *Read* v. *Frankforth B'k*, 23 id. 321; *Rhodes* v. *Forwood*, L. R., 1 App. Cas. 256; *Orr* v. *Ward*, 73 Ill. 317; *Thurnell* v. *Balbernie*, 2 M. & W. 786, 790; *Brogden* v. *Manott*, 2 Scott, 703, 710; *Worsley* v. *Wood*, 6 T. R. 710; *Davison* v. *Moore*, 3 Dougl. 28; *Milner* v. *Field*, 5 Exch. 829; *Morgan* v. *Birnie*, 9 Bing. 672; *Smith* v. *Brady*, 17 N. Y. 173.) Where a servant is to be paid in proportion to the work done there is no obligation on the master's part to provide work. (*Sykes* v. *Dixon*, 9 Ad. & El. 693; *Williamson* v. *Taylor*, 5 Q. B. 175, 671; *Lees* v. *Whitcomb*, 5 Bing. 37; *Dunn* v. *Sayles*, id. 685; *King's Accumulative L. Fund Ass. Co.*, 3 C. B. [N. S.] 151; *Hercules Ins. Co.* v. *Brinker*, 77 N. Y. 435.) After the State had dissolved the Globe and enjoined it and the claimant as one of its agents from issuing any policies, all obligation to pay such agent for work which was thus enjoined was at an end. (Laws of 1859, § 7; *People* v. *At. Mut. Life*, 73 N. Y. 171, 181; *Loomis Case*, 3 Ld. Cairns' Dec.; Albert Arbitration Act, p. 177; *Manning* v. *John Hancock Life Ins. Co.*, 9 Ins. L. J. 417, 420; *Ex parte* v. *McClure*, L. R., 5 Ch. App. 737; *Hercules Ins. Co.* v. *Brinker*, 77 N. Y. 435.) When a contract is terminated by the act of the law, the party is entitled to be paid for his services to that date only, and has no claim for damages against the person employing him. (*Jones* v. *Judd*, 4 Comst. 412; *Tonting* v. *Hubhard*, 3 B. & P. 291; *Melville* v. *De Wolff*, 82 E. C. L. 846; *Cutter* v. *Powell*, 2 Smith's Lead. Cases, 53; *Pollard* v. *Schaffer*, 1 Dallas, 210; *Babcock* v. *Murphy*, 20 La. Ann. 339; *Watkins* v. *Robert*, 23 id. 167; *Melville* v. *De Wolf*, 4 El. & Bl. 844; *Ball* v. *Liney*, 44 Barb. 505; *Sands* v. *Same*, id. 626; *Whitfield* v. *Zellnor*,

24 Miss. 663; Wood's Master and Servant, 387; *Sterling* v. *Maitland*, 5 B. & S. 849, 852.)

*John C. Keeler* for attorney-general. The act of the State which dissolved the corporation, and prohibited it from exercising its corporate franchises, and its agents from doing business for it, annulled appellant's contract, and he cannot recover for salary thereunder after the date of the service of the injunction order. (*Reed* v. *Frankfort B'k*, 23 Me. 321; *Knight* v. *Bean*, 22 id. 531; *Beebe* v. *Johnson*, 19 Wend. 502; *Mumma* v. *Potomac Co.*, 8 Peters, 287; *Sterling* v. *Maitland*, 5 B. & S. 848–850; Laws of 1869, chap. 902, §§ 7, 8; *Jones* v. *Judd*, 4 N. Y. 414; *Whitfield* v. *Zellnor*, 24 Miss. 663; *People* v. *Bartlett*, 3 Hill, 570; *Wolfe* v. *Howes*, 24 Barb. 176; *Dermott* v. *Jones*, 2 Wall. 7; 2 Parsons on Contracts, 186; *Cobb* v. *Harmon*, 23 N. Y. 150; *Wellington* v. *West Boylton*, 4 Pick. 103; *People* v. *Manning*, 8 Cow. 299; *Carpenter* v. *Stevens*, 12 Wend. 589; *Heine* v. *Myer*, 61 N. Y. 177; *Melville* v. *De Wolf*, 4 E. & B. 842; *Presbyterian Church* v. *City of New York*, 5 Cow. 538; *Cohen* v. *N. Y. Mut. L. Ins. Co.*, 50 N. Y. 622; *Knight* v. *Bean*, 22 Me. 431, 536; *Spalding* v. *Rosa*, 71 N. Y. 40; *People* v. *Manning*, 8 Cow. 297.) The court had the right to dismiss appellant's claim because it would have been inequitable and unjust to allow him to participate with the policy-holders in the distribution of the assets of this insolvent corporation. (Laws of 1869, chap. 902, § 8; *Commonwealth* v. *Eagle F. Ins. Co.*, 14 Allen, 348; *Reed* v. *Frankfort B'k*, 28 Me. 318–320, 321; *Sawyer* v. *Hoag*, 17 Wall. 621; *Lawrence* v. *Nelson*, 21 N. Y. 158.) The general agents and other officers of the company ought to have no equities superior to those of the policy-holders. (*People* v. *Security Life*, 78 N. Y. 126; *N. Y. Ins. Co.* v. *Statham*, 93 U. S. 34.)

FINCH, J. There was no breach of the contract between Mix and the insurance company by either of the parties. It was in process of continued performance according to its terms, and

was unbroken at the moment when the injunction order was served. That operated upon both parties at the same instant, and perpetuated the then existing rights and conditions. Before its service the company had done nothing to prevent performance, and we must assume was both ready and able to perform. It had done no act which amounted to a refusal, or which made it unable to carry out its contract. For aught that appears it would have done so if let alone. But it was not permitted to perform. The State, by the injunction order operating alike upon the company and its agents, paralyzed the action of both the contracting parties, so that neither could perform, or put the other in the wrong. Thereupon the company could not refuse, and did not refuse. To put it in the wrong, and make it liable for a breach, required action on the part of Mix. As a condition precedent he was bound to show both ability and readiness to perform on his part. (*Shaw* v. *Republic Life Ins. Co.*, 69 N. Y. 292, 293; *James* v. *Burchell*, 82 id. 113.) He could do neither. Performance by him had become illegal. It would have been a criminal contempt, and possibly a misdemeanor. There could be neither readiness nor ability to do the forbidden and unlawful acts. (*Jones* v. *Knowles*, 30 Me. 402.) So that from the necessity of the case, as there was no breach on either side before the injunction, so there could be none after. What had happened was a dissolution of the contract by the sovereign power of the State, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement. One party was a corporation. It drew its vitality from the grant of the State, and could only live by its permission. It existed within certain defined limitations, and must die whenever its creator so willed. The general agent who contracted with it did so with knowledge of the statutory conditions, and these must be deemed to have permeated the agreement, and constituted elements of the obligation. (*People* v. *Security Life Ins. Co.*, 78 N. Y. 115.) Then, too, the subject-matter of the contract was that of skilled personal services to be

rendered by one and received by the other.   It was inherent in
the bargain that a substituted service would not answer.  The com-
pany were not bound to accept another's performance instead of
the chosen agent's, nor was he in turn  bound to work for some
other master.   The contract in its own nature  was  dependent
upon  the continued life of both parties.   With the  natural
death of one, or the corporate death  of the other, the contract
must inevitably end.   So that, in its own inherent  nature,  by
the unexpressed conditions subject to which it was made,  and
by the decree enjoining both parties at the same moment from
further performance, the contract was terminated and no breach
existed.

It is easy to see  how the situation of Mix differs from  that
of  the policy-holders.   We held in the *Security case* that the
latter were creditors and stood upon a breach of their con-
tract; but that breach was not the dissolution of the company.
It ante-dated such dissolution and was the prior cause, of which
the latter was the consequence.   The reserve required by law
was essential to the safety of the policy-holders.   A covenant
to maintain it was implied in every contract of insurance.
That covenant the company broke by its own neglect, for
which it alone was assumed to be responsible.   The State
found these contracts broken and for that reason interfered, and
when its decree of dissolution came it had to deal with broken
contracts and treated them as it found them.   The same dis-
tinction explains the English cases which were commended to
our careful attention.  (*Yelland's Case*, L. R., 4 Eq. 350 ;
*Clarke's Case*, L. R., 7 Eq. 550 ; *Logan's Case*, L. R., 9 Eq.
149 ; *Maclure's Case*, L. R., 5 Ch. App. 737 ; *Dean & Gil-
bert's Case*, Law Jour., 41 Ch. [N. S.] 476.)   In all of them the
companies stopped payment before any intervention of the law,
and this being done by open and public notice, amounted to a
voluntary refusal of performance, and, therefore, a breach of
contract, established before the winding up orders were made
and the liquidators appointed.   When the court interfered it
found broken contracts and a liability for a breach already
existing, and dealt with what it found.   It did not itself break

what was already broken. Still another class of cases is obviously different. (*People* v. *National Trust Co.,* 82 N. Y. 283.) They are such as affect property rights and survive the death of the parties. ´ Performance can be made by assignees or successors, and nothing in the essence of the agreement depends upon the life ´of the parties, or forbids its complete execution by others. And in all of the cases thus cited there was no incapacity affecting both parties alike. The one suing for a breach was free, so far as he was concerned, to offer performance, and had the necessary ability. He could thus put his adversary in the wrong, while here the same blow, at the same instant, stopped performance on both sides and made it illegal on the part of either.

But exactly at this point the learned counsel for the appellant interposes a proposition which presents a difficulty. Practically conceding most that we have said, he insists that the contract is only dissolved when its destruction comes from an outside and independent force, operating separately, and not occasioned directly or indirectly by the act or omission of the party pleading it as an excuse. In other words such party must be innocent and blameless in respect to the *vis major* which dissolves the contract, and if not so, cannot plead as an excuse what practically is his own fault and act. And our attention is directed to this feature as characterizing the cases in which the agreements were held to have been ended. They are grouped in the appellant's points and need not to be repeated. He has stated their purport correctly. In all of them both parties were innocent of and blameless for the outside and independent agency which dissolved the contract. And the argument is now pressed that in the present case the company was not only not blameless for its dissolution, but that resulted from its own acts or omissions, was directly caused by them, and, therefore, such dissolution must be deemed its own act, which it cannot plead as an excuse. This leads to the inquiry whether the company was so the responsible cause of the action of the State as to make the dissolution its own act.

The answer is that no such fact is shown, nor is it a neces-

sary inference from the facts which do appear. The judgment of dissolution is not here. We only know from the stipulation of the parties that the company was organized under chapter 902 of the Laws of 1869, and that the superintendent of insurance made the certificate provided for in section 7 of said act, and the attorney-general thereupon commenced the action for dissolution. The superintendent probably acted because the company's reserve had fallen below the lawful and safe level. Perhaps we ought to presume as much as that, but if so, the result may have happened from causes beyond the company's control and without its fault. It was its duty to invest the reserve and keep it interest-bearing. It may have done so with entire prudence at the time, and in strict accordance with the law, and then all values have so shrunk and dwindled from commercial causes as to have impaired the reserve. In such case the dissolution would have come from outside and foreign forces, operating independently and both beyond control. If it be said the company was still the indirect cause of the dissolution since it made the investments and failed to repair and strengthen them to the legal limit, the answer may be that it could not do it. The rule must not be pushed to an extreme. Thus, in the case of the sailor having a running contract for service with the ship-owner, and sent home by a naval court as a witness against the captain for shooting one of the crew, and unable to return to the ship after the trial, and whose contract was held to be dissolved (*Melville* v. *De Wolf*, 4 E. & B. 844), similar suggestions might have been made. It could have been said that it was his duty to return to the ship, but that such return had become impossible, without his fault, or that of the ship-owner, was held sufficient. Then, too, it could have been argued that if the sailor had not been present at and seen the murder, which was his voluntary act, and which he might have avoided, the law would not have sent him home. Of course nobody thought of pushing the rule to such an extreme; nor must it be done here. The sailor was not bound to foresee that his innocent and blameless presence at the scene of the murder would involve a dissolution of his contract through the

intervention of the law; nor the company that its investments, honestly and prudently made, would shrink beyond repair, and bring down a dissolution by the State. If, in such case, in some sense, such dissolution may be deemed the act of the company; in a similar sense, and through the same mode of reasoning, we might, in a case of master and servant, trace the death of the former to his own negligence in eating or drinking, or exposure to heat and cold, and so determine his nonperformance to be inexcusable, and to draw after it damages for a breach. As it is thus evident that a man may be, in some sense, the occasion, or even the indirect cause of his own death, and in the same sense blamable for it, without its being, in a legal sense, and considered as a *vis major*, his own act; so a corporation may be said, through the conduct of its officers, to have, in some sort, occasioned its own corporate death, while yet it would remain true that its dissolution by the independent force of the State would be not its own act; not at all the product of its own volition; and not a breach by it of its contracts previously unbroken. Especially is this true as between the company and its own officers contracting with it. One of these may be innocent himself of any wrongful act or neglect, and yet it is inherent in the nature of his contract that he takes the risk of such act, or neglect, on the part of the other officers, as may tend, under the law, to produce a dissolution, if such dissolution in fact occurs. That possibility entered into his contract, when made, and belonged to it as an inevitable condition, for its complete performance depended upon the corporate life, and that under the law upon the fulfillment of the law's conditions. In the event of such corporate death the motive of the State, or the ground of its act is wholly immaterial. Its risk was upon the contractor, whatever its cause or occasion; and, however it may have been provoked or induced, it must be deemed the act of the State, and not of the corporate body. And it is the independent act of the State, for although the reserve may have fallen below the prescribed level, a dissolution is not the necessary consequence. That may follow, or may not follow. The superintendent of insur-

ance may make the certificate which sets the law in motion, or may withhold it. The matter lies within his sole discretion and control. He may act or not, as he chooses; but if he does it is his act, and not the company's; dependent wholly on his volition and not on that of the corporation; an independent agency guided by its own motives, and not the act of the company producing its own death.

If it be asked where this doctrine leaves the policy-holders, and their claims for breach of contract, the answer is two-fold. Where the dissolution follows an impaired reserve, their contracts, as we have already said, were broken by the company before the State interposed. But their rights go much deeper than that. For while in the *Security* case, we put those rights upon the ground of breach of contract, we did not at all decide that there was no other. If the State had dissolved this company while its contracts with the policy-holders were entirely unbroken, and by an exercise of sovereign power founded upon motives of public policy, we should still recognize and enforce the rights of policy-holders on a different ground. The assets to be distributed would be the reserve or so much of it as remained. That reserve, as we showed in the *Security* case, is made up of the excess of premiums paid by the policy-holders in the earlier years of their policies beyond the real cost of insurance to enable them to be carried in later years when the risk should be greater. Practically, therefore, at the date of dissolution the reserve represents the earnings of the policies and the contributions of the policy-holders. And as, in the case of contracts for personal services dissolved without fault by death or the act of the law, the contract is apportioned, and the servant entitled to his actual earnings to the date of dissolution, so the policy-holders would be entitled to the just earnings of their policies to the same date, and have an undoubted equity upon the assets. What they paid in excess and in advance was held by the company to some extent as their trustee and for their benefit, and when it is dissolved they have a claim upon the assets in the nature of an equitable ownership which gives them a right beyond that of mere creditors seeking dam-

ages for a breach of contract. To make, and to carry out con-
tracts of insurance is the very object of the corporation, and the
sole purpose of and excuse for its existence. The State gives
it life for that end, and takes it away when the result is not
reached. It watches it during life to see that it fulfills the pur-
pose for which it was created, and buries it when that purpose
fails. And as in the creation of the company, and in its super-
vision and control the rights of the policy-holders and their safety
are the paramount considerations, so they remain paramount
when corporate death is inflicted. The blow is struck in their
interest, and their equitable claim upon the assets is evident and
strong. In distributing such assets a court of equity may and
must give heed to equitable considerations. The claimant is not
suing the company at law, for the corporation is dead. He comes
in collision with the policy-holders in equity; and while he is
found to have not even a just debt for damages because of his
relation to the company and the nature of his contract, and
therefore no shadow of an equity against the assets, the policy-
holders resisting his claim are protected by an equity not to be
overlooked or disregarded.

Other considerations of very serious import were adverted
to by the courts below, which we need not here discuss. What
has been said sufficiently indicates our opinion that no error
was committed in rejecting the claim of the general agent.

The order should be affirmed.

All concur.

Order affirmed.