DONALD McKELLAR, Respondent, *v.* AMERICAN SYNTHETIC DYES, INCORPORATED, Appellant.

Second Department, January 25, 1918.

**Principal and agent — contract of special employment construed — appeal — errors available in absence of exceptions.**

A letter, by which the defendant states that " we understand from you that you are in touch with the representative of a prospective purchaser of picric acid " and " we are writing this letter to assure you that if the business which you are introducing to us on this occasion results in the making and carrying out of a contract for the supplying of picric acid to this prospective purchaser, we will set aside to pay over to you a commission," constitutes a contract of special employment, and the services of the person to whom the letter was written " in touch with the representative of a prospective purchaser " are of the essence of the contract, and the defendants cannot be held liable thereunder for commissions on a contract of sale procured through another broker introduced, by the one to whom the letter was written, to persons not in the contemplation of the parties at the time of the writing of the letter.

Errors in the interpretation of or instructions in relation to said contract by the court are available on appeal, even in the absence of exceptions.

APPEAL by the defendant, American Synthetic Dyes, Incorporated, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county

of Nassau on the 11th day of June, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 14th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

The action is brought by the assignee of Knapp and Kelley to recover broker's commissions upon a sale of 3,100 tons of picric acid to the Russian government for $6,200,000. The sale was made in the fall of 1915    The plaintiff declared upon a contract made in a letter written by the defendant and delivered by it to Knapp on June 22, 1915.    The plaintiff recovered a verdict at Trial Term of $261,000, and the defendant appeals.    The contract was as follows:

" New York City, *June 22nd*, 1915.

" Mr. Clyde D. Knapp and Mr. C. Carleton Kelley,
            " New York City:

" Gentlemen.— As the result of a conference this afternoon we understand from you that you are in touch with the representative of a prospective purchaser of picric acid in large quantity and covering deliveries for substantially eighteen months.    You desire to be protected in the matter of a commission for bringing about a sale, if any shall be made on the part of the American Synthetic Dyes Incorporated to the prospective purchaser in question, and, therefore, we are writing this letter to assure you that if the business which you are introducing to us on this occasion results in the making and carrying out of a contract for the supplying of picric acid to this prospective purchaser, we will set aside to pay over to you as a commission 4.1% of the gross sales price received under such a contract.    It is understood that there is no obligation resting on the American Synthetic Dyes Incorporated to make any contract which it may not consider in its interest to make."

The learned court read the letter to the jury, and then said: " That contract as I read it and as I interpret it to you means nothing more than this: That this man Kelley and this man Knapp were brokers, and that under the contract that they might introduce to these people, as prescribed by the words of the contract itself, a purchaser for the sale of that picric acid.   If the brokers named above, the plaintiff's assignors in this case, were in any manner whatsoever

instrumental in bringing about or introducing or negotiating a sale of picric acid to a prospective purchaser, the defendant in this case would be liable for the commission, and the commission is fixed by the terms of the contract, and that is the contract as I interpret it, and, therefore, as I view this litigation there are two questions only which you need consider in this case: The first is, did the plaintiff's assignors, Kelley and Knapp, ever bring to the attention of the defendant company, or introduce to the defendant company or bring about in any manner, directly or indirectly, a customer to whom they sold picric acid as covered and intended by that contract and agreement. Did they do that? The defendant says they did not. That is one question. And the next question you will consider in this case is whether this contract was ever abrogated. The defendant says it was. The plaintiff says it was not."

*Arthur J. Shores*, for the appellant.

*Henry A. Uterhart* [*Stephen C. Baldwin* with him on the brief], for the respondent.

Jenks, P. J.:

The action was tried and submitted upon the express contract, and there was no question of recovery on *quantum meruit*. The undisputed proof shows that about a month after the making of the contract for commissions, Knapp introduced to the defendant, Hollingsworth, a broker, and that thereupon Hollingsworth, as broker for the defendant, negotiated the contract for the sale. Upon these facts, the court's interpretation of the contract, and its instructions to the jury as to proof that would cast liability upon defendant, made the verdict for the plaintiff almost inevitable. Referring to such instructions, none could say that an introduction of a successful broker to the defendant was *not* " in any manner whatsoever instrumental in bringing about or introducing or negotiating a sale  *  *  *  to a prospective purchaser," or that by such introduction the introducer did *not* " bring to the attention of the defendant company, or introduce to the defendant company or bring about in any manner, directly or indirectly, a customer," or that the introducer did *not* do

" anything under it [the contract of employment] which the letter and spirit of this contract calls for," or that such introduction had *not* " inured to the benefit of this defendant company through his instrumentality, no matter how slight." It is true that the court confined the jury to the contract, by such phrases as " If his assignors did anything under it which the letter and spirit of this contract calls for," and " a customer to whom they sold picric acid as covered and intended by that contract and agreement," but the court thereby referred to the contract as interpreted by the court itself.

It seems to me that the correctness of the court's interpretation of the contract presents the crucial question of this appeal.

I think that the contract was one of special employment, not one of general employment of a broker to find a purchaser or a certain prospective purchaser. Not the services of Knapp, but the services of Knapp " in touch with the representative of a prospective purchaser," were " of the essence of the contract," to use the phrase of ALLEN, J., in *Spalding* v. *Rosa* (71 N. Y. 43). Knapp as a broker, and Knapp in touch with the representative of a prospective purchaser, were two different entities. " It was inherent in the bargain that a substituted service would not answer." (*People* v. *Globe Mutual Life Ins. Co.*, 91 N. Y. 180.) The compensation or commission named contemplated a sale that resulted from the business which Knapp was then " introducing " — not Knapp unqualified, but Knapp in touch with the representative of a prospective purchaser. " In touch " means in " close relation of mutual confidence, sympathy, interest, or the like; sympathy; accord or harmony in relation to common interests." (Century Dictionary.) It implied even more than knowledge of the representative and of his identity, and more than a general acquaintance with him. Naturally, the prospective value of a broker " in touch " with the representative of a prospective purchaser would be greater to a vendor than the value of a broker who might find a purchaser, or even the particular purchaser in prospect. There is, perhaps, an illustration of this difference in this very case. For we find that the defendant agreed to pay a commission of 4.1 per cent. to Knapp and paid but $1\frac{1}{2}$ per cent. to Hollingsworth. The error of

the court was that it interpreted this contract as performed if Knapp as a broker was " in any manner whatsoever instrumental in bringing about or introducing or negotiating a sale of picric acid to a prospective purchaser."

The defendant contended that Knapp had not performed the contract of June 22. It appeared that upon delivery of the letter of that date that constituted the contract, Knapp took the representative of the defendant to visit Herbert, an associate of Kuhn, Loeb & Co., who he thought had some relation with the Russian government in that Herbert had inquired the freight rates of picric acid to San Francisco, and thereupon negotiations were begun through Herbert. But those negotiations came to nothing, and thereafter Herbert notified the defendant of his failure, and abandoned any further effort. Then it was that, at the end of July, Knapp introduced Hollingsworth to the defendant. Knapp did not know Hollingsworth at the time of the delivery of the letter of June 22. Hollingsworth testified that he never represented the Russian government. His sole relation with that government, as testified to by him, was that he had known personally the head of the Russian Commission since May, 1915. Consonant both with his bill of particulars and with the avowal at trial of his learned and able counsel, " It is Mr. Hollingsworth who conducted it, and we claim under that contract, which is in evidence," the plaintiff upon cross-examination undertook, not at first but finally, to identify Hollingsworth as the representative of the prospective purchaser referred to in the contract of June 22. Knapp was asked: " Q. And who was the representative of the Russian Government that you then had in mind?   A. Mr. Hollingsworth — not Mr. Hollingsworth, excuse me. I was then in touch with a representative through Mr. Kelley.   Q. Through Mr. Kelley? A. Mr. Hopkins and Mr. Herbert.   *   *   *   Q. What persons were you in touch with and what persons did you have in mind other than Mr. Hopkins and Mr. Herbert and your own associate, Mr. Kelley, when you represented to the American Synthetic Dyes, Incorporated, that you were in touch with a prospective purchaser?   A. I had Mr. Lutkins, of the General Chemical Company."   To adopt the narrative form, the witness continued: I was in touch with Mr. Lutkins

through Mr. Kelley, and Mr. Lutkins through Mr. Kelley advised me — had assured me that Mr. Hollingsworth was the real avenue to the Russian government, that is, to the purchasing department on picric acid in the Russian government. This had been told me before my talk with Mr. Washburn (the president of the defendant) and before I had received the letter of June 22. I did not at that time meet Mr. Hollingsworth, but I was in touch with him through Mr. Kelley. Mr. Kelley knew Mr. Lutkins very well. Mr. Lutkins did not know Mr. Hollingsworth, but he did know Mr. Munson, Mr. Hollingsworth's secretary, very well, as did Mr. Kelley. I do not know whether or not, at the time when I made the representation to Mr. Washburn and had received the letter of June 22, I or Mr. Kelley had opened up with Mr. Hollingsworth or Mr. Munson the subject of a sale of picric acid to the Russian government. I was first introduced to Mr. Hollingsworth on June 29. At the time I had received this letter, I had not discussed with Mr. Munson or Mr. Hollingsworth, or Mr. Hopkins even, any possibility of a sale of picric acid to the Russian government.

The jury could have inferred from Knapp's testimony that he had several persons *in mind, e. g.,* Hopkins, Herbert, Hollingsworth, at the time of the letter of June 22. Because Knapp was not contradicted, the jury were not bound to believe that Hollingsworth was then in Knapp's mind. For one cannot contradict another's thought, unspoken. With immunity from contradiction, Knapp could have testified that any individual then known to him was in his mind when he made the agreement. As we have seen, Knapp does not pretend that he had " the," but several (supposed) representatives in mind. But there was evidence contrary to such contention as to Hollingsworth. At first Hollingsworth was not named, and nothing was done to identify him. But Knapp did forthwith indicate Herbert, in that he took the representative of the defendant to Herbert in Kuhn, Loeb & Co.'s office, and thereupon negotiations were begun for a sale to the Russian government which were abandoned only after efforts of some weeks' duration. And there is evidence that immediately after the letter of June 22d was delivered, Knapp had announced that the prospective purchaser was Kuhn, Loeb

&. Co. Only thereafter was Hollingsworth brought into relation with the defendant. Even if Knapp had Hollingsworth in mind with others, there is considerable proof to indicate that Hollingsworth was not then, nor at any time, a representative of the Russian government, and also that Knapp was not in touch with Hollingsworth, even if he had him in mind. I do not undertake to summarize all of the proof upon this question, for I have no purpose to consider the weight of it. My purpose is rather to indicate that there was a serious question presented whether the plaintiff had performed the contract as I interpret it.

The vice of the verdict is that the plaintiff, declaring upon the express contract, was enabled to recover thereunder by an interpretation of that contract that relieved him from proof of a performance required by the terms of the contract.

There were no exceptions taken to the interpretation or the instructions, but it is well settled that, even in the absence of exceptions errors of such a character are available in this court.

I do not express any opinion upon the proof offered upon the issue described by the learned court as " abrogation." The question whether the dealings of Knapp and the defendant subsequent to the failure with Hopkins and preliminary to the defendant's employment of Hollingsworth, constituted a modification of the contract of June 22, in that the introduction services of Knapp entitled him to the commission named in that contract, was not directly presented to the jury.

I advise that the order and judgment be reversed and that a new trial be granted, costs to abide the event.

THOMAS, RICH, PUTNAM and BLACKMAR, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.