GENERAL ANILINE & FILM CORPORATION, Plaintiff, *v.* BAYER COMPANY, INC., et al., Defendants.

Supreme Court, Special Term, New York County, July 19, 1946.

*Harold F. McGuire* and *Milton I. Newman* for plaintiff.

*Paul W. Williams* and *Stanley D. Halperin* for defendants.

HECHT, J. This is a motion, pursuant to subdivision 6 of rule 109 of the Rules of Civil Practice, to strike out the two separate and complete affirmative defenses upon the ground that they are insufficient in law.

Plaintiff and defendant Sterling are both Delaware corporations; defendant Bayer was organized as a domestic corporation and has been dissolved pursuant to article 10 of the Stock Corporation Law by the filing of a certificate of dissolution by Sterling, as the record holder of all the outstanding shares of Bayer entitled to vote thereon. All of Bayer's assets were distributed to Sterling as its sole stockholder.

The first cause of action alleges that in 1923 a German company named Leverkusen entered into a written agreement with Bayer. This agreement, which is Exhibit A annexed to the answer, was the usual form of international cartel arrangement under which the two companies specified the various countries in which each was to have the exclusive right to sell certain products, and the exclusive right to use the name " Bayer "

and the " Bayer Cross " mark, the ownership of which name and mark was claimed by each company. Bayer agreed, for a period of fifty-five years, to pay to Leverkusen a sum equal to one half of the net profits received from all Bayer's business in Cuba, which was one of the countries where Bayer was given exclusive sales rights. In 1926, Bayer made a written agreement with I. G. Farbenindustrie by which the latter was substituted for Leverkusen in the 1923 agreement, which otherwise was ratified in all respects and which shall hereafter be called " the Agreement ".

Subsequently, the profits to which I. G. Farbenindustrie was entitled under the Agreement were assigned by it to General Aniline Works, Inc., which was duly merged into plaintiff. Title to substantially all of plaintiff's stock is now vested in the Alien Property Custodian of the United States.

The complaint alleges, finally, that Leverkusen and I. G. Farbenindustrie have duly performed all the conditions of the Agreement on their parts to be performed; that Bayer made payments of profits aggregating over $600,000 for the years 1930 to 1940, inclusive, as provided for therein, to plaintiff and General Aniline Works; that defendants earned large profits from business in Cuba during the years 1941 to 1944, inclusive, but have not made any payment of said profits to plaintiff, although demand has been made therefor. Damages of $1,000,-000 are alleged.

The second cause of action alleges that defendants have received and collected to the use and for the benefit of the plaintiff $1,000,000, which defendants have retained and refused to pay plaintiff, although due demand had been made therefor.

The first separate and complete defense alleges that in September, 1941, a final judgment and consent decree was entered in the United States District Court for the Southern District of New York. This decree resulted from a complaint filed by the United States of America against Bayer and Sterling and two of their officers, alleging that the Agreement violated the antitrust laws of the United States. Defendants, though denying any such violations, consented to the entry of the decree, which adjudged the Agreement to be unlawful, enjoined Bayer and Sterling from carrying out or enforcing it, or from paying to I. G. Farbenindustrie any royalties or share of profits pursuant to said Agreement with respect to sales following the effective date of the decree. Neither plaintiff nor any of its predecessors in interest was a party to this action or decree.

Defendants allege that further performance of the Agreement on their part was rendered impossible by the foregoing decree, which is presently in full force and effect.

Defendants do not plead that the Agreement is illegal and that, therefore, no cause of action can be founded thereon (cf. *Tooker* v. *Inter-County Title Guar. & Mtge. Co.*, 295 N. Y. 386; 5 Williston on Contracts [Rev. ed.], § 1630; Restatement, Contracts, § 598). Under such a plea, defendants would have the burden of proving the illegality of the Agreement and plaintiff would be afforded a full opportunity to meet that issue.

Plaintiff would be deprived of this opportunity if the defense as pleaded herein were sustained. It would be denied its day in court to assert the rights which it claims under a contract fully performed by it, solely by virtue of a decree (entered on defendant's consent) which concededly does not bind and could not be binding upon plaintiff because made in an action to which neither plaintiff nor any of its predecessors was a party (*Pennoyer* v. *Neff*, 95 U. S. 714, 732). To permit such a result is repugnant to the court's elemental sense of justice. The only authorities on the subject which counsel has been able to find support the foregoing reasoning.

In *Board of Commissioners* v. *Tollman* (145 F. 753) certain county commissioners secured a temporary injunction from the North Carolina Superior Court, enjoining the county treasurer from making payments on some of the bonds issued by the county, on the ground of their alleged invalidity. Tollman, one of the stockholders, brought suit in the Federal court for a decree adjudicating the validity of the bonds, naming the commissioners and the treasurer as defendants. In affirming a decree for complainant, the court said (pp. 759–760): "But in the action in the [North Carolina] superior court that court has not taken possession of the fund, and the action is not in any sense one to enforce a lien, to marshal assets, to administer a trust, to liquidate an insolvent estate, or of a nature at all similar to any such action * * *. The suggestion that the treasurer will be in contempt of the superior court should he, in obedience to the order of the court below, pay the fund in his hands to the receiver, seems to us without foundation. If such suggestion be sound, the appellee is as much bound by the decree rendered by the superior court as he would be if he had been made a party to that suit. The injunction of the superior court necessarily means no more than that the treasurer must not voluntarily pay the coupons. It does not mean that he shall not obey the lawful order of another court having jurisdiction of the parties. If

the treasurer should, the decree below being affirmed, refuse to deliver the fund in his hands to the receiver, he will be in contempt of the court below; but obedience to such decree cannot be properly regarded as a contempt of the Superior Court. If, however, there be any possible doubt on this point, the remedy of the treasurer is not a stay of proceedings in the court below, but an application to the superior court to so modify its order as not to restrain the treasurer from obeying the lawful order of a court of co-ordinate jurisdiction and equal rank. And this relief we doubt not will be there readily granted."

*National Carbon Co.* v. *Bankers' Mortgage Co.* (77 F. 2d 614) was a receivership suit in which plaintiff claimed unpaid rental under a lease executed by defendant covering office space in Kansas City, Missouri. Defendant pleaded that it was incorporated under the laws of Kansas, which required it to keep a general office in that State, and that pursuant to such statutes an order of the Kansas court, entered on defendant's consent, had enjoined it from removing its office from Topeka, Kansas, to Kansas City, Missouri. In overruling this plea of *vis major,* the court said (p. 618): "It [defendant] acquiesced in and consented to the injunctive decree entered against it. It aided in the procurement of what it now relies upon as a defence against its liability on the Kansas City lease. Neither in law nor equity can a litigant take advantage of such duplicitous, unfair and unjust conduct."

My conclusion that this defense is invalid is not conditioned upon the assumption made in the *Tollman* case (*supra*) that the District Court will relieve these defendants from compliance with its injunction if they are compelled to make the payments to plaintiff by a judgment of this court. The conclusion is based on the broader ground that, when this court is called upon to adjudicate the rights of the parties under this Agreement, it must do so without any regard to a decree of another court which is absolutely nugatory as to one of the parties because that party was never subjected to the jurisdiction of the court which made the decree (*Mahr* v. *Norwich Union Fire Ins. Society,* 127 N. Y. 452; Restatement, Judgments, §§ 5, 6, 11).

In the *Mahr* case (*supra*), plaintiff, claiming to be the equitable assignee of a fire and insurance policy, sued to enjoin the insurer from paying the proceeds to one Kelly, in Iowa, who held a legal assignment of the policy. No service was made upon Kelly within this State, and he did not appear in the action. The insurer then moved to dismiss the complaint unless Kelly be brought in so as to be bound by any judgment herein.

The trial court, finding the plaintiff's assignment was superior to that of Kelly, enjoined the insurer from paying the proceeds of the policy to him and directed payment thereof to plaintiffs. In reversing this judgment the court said, VANN, J. (pp. 461–462): "As it is conceded that Kelly, although nominally, is not really a party to the action, he has not had his day in court and the decree in favor of the plaintiff, being void as to him on that account, is powerless to affect his rights or to afford protection to the defendant company in obeying its command. The absence of jurisdiction over a party is the absence of power to render judgment against that party. While the court assumed to pronounce judgment against Kelly and to restrain him from receiving the money due upon the policy and from suing for its recovery, its action in that regard was *coram non judice* and void as to him. It could not exercise judicial power over one who was not subject to its jurisdiction, nor compel him to obey a decree that was rendered without due process of law. While its command to the company not to pay Kelly could be enforced by punishment for disobedience, its command to Kelly not to sue the company could not be enforced by punishment or otherwise, because it was made without authority. *Hence Kelly could compel the company to do what the judgment prohibited it from doing.*" (Italics supplied.)

Whether or not the District Court will modify its injunction to the extent necessary to permit defendants to comply with any lawful order or judgment of this court which may be made in the instant action, the difficulty caused by the existence of that injunction has resulted from defendants' own acts in consenting thereto, despite their denial of the illegality of the Agreement on which the injunction was predicated. They must, therefore, extricate themselves as best they can from this self-created dilemma. This is a much fairer result than to hold plaintiff bound by a decree on which it had no opportunity to be heard.

Though this court may not entertain a suit for the enforcement of the antitrust laws, a defense that a cause of action does not lie by reason of the violation of such laws is available in an action brought in the courts of this State (*Metropolitan Opera Co.* v. *Hammerstein*, 162 App. Div. 691, affd. 221 N. Y. 507; *Ainsworth* v. *Cooper Underwear Co.*, 227 App. Div. 837; *Remington Rand, Inc.,* v. *Internation Business M. Corp.*, 167 Misc. 108, 115–116). Defendants do not dispute this, but urge that as a matter of comity, this court should dismiss the complaint and remit plaintiff to the District Court for such further relief as it may obtain under the provision in the decree that "jurisdic-

tion of this case is retained for the purpose of *enabling any of the parties to this decree* to apply to the court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this decree, for the modification or termination of any of the provisions thereof; for the enforcement of compliance therewith, and for the punishment of violations thereof " (italics supplied).

Plaintiff, being a Delaware corporation, is now subject to the process of the District Court. It would seem that any application to make plaintiff a party to the antitrust action should be made either by the United States or by these defendants, who are the only parties to the decree. Defendants' argument is that the United States is an indispensable party to any adjudication passing on the invalidity of the Agreement. This contention is negatived by the *Hammerstein* case (*supra*) and the other authorities cited above. It cannot be assumed that the United States desires to be heard on this issue as to whether these payments should be made by defendants to plaintiff until the Attorney General takes some affirmative action in the premises, especially since the relief sought herein is merely collection by the Alien Property Custodian of the stipulated payments for promises which already have been performed by the corporations whose stock has vested in him.

If plaintiff attempted to intervene in the antitrust action where the decree was entered five years ago, it would be met with " the settled rule of practice that intervention will not be allowed for the purpose of impeaching a decree already made " and an order denying leave to intervene would not be appealable (*United States* v. *California Canneries*, 279 U. S. 553, 556). It would seem from the above-quoted provision of the decree that any motion to bring plaintiff into that proceeding should emanate from one of the parties thereto, inasmuch as plaintiff now is subject to the process of that court.

Without attempting to prejudge at this time what determination should be made if and when the Attorney General of the United States should take such action, this court would not be justified in relinquishing jurisdiction on any theory of comity at this time, when there is no pending action to which plaintiff is a party, where it can obtain the same full hearing on the merits of this defense of illegality.

*Torquay Corporation* v. *Radio Corporation of America* (2 F. Supp. 841) is clearly distinguishable. There, Radio Corporation was one of the defendants in a previous antitrust action

in Delaware and had consented to the entry of a decree directing the other defendants (General Electric and Westinghouse) to distribute to their own stockholders the stock of Radio held by them. Subsequently, action was instituted by Torquay as a stockholder of Radio, against the same defendants, to compel a distribution of stock in derogation of the antitrust decree. Since Radio had been a party to the Delaware suit, its stockholders, whose rights were derived through the corporation, were bound by both the judgment and the consent, and any modification thereof *sought by a party, thereto* required the presence of the other parties, including the United States.

The other authorities cited by defendants have no application to the situation disclosed in the case at bar.

In *People* v. *Globe Mutual Life Ins. Co.* (91 N. Y. 174) the Superintendent of Insurance filed a certificate that defendant had sustained an impairment of reserves and the Attorney-General thereupon obtained an order of the Supreme Court dissolving the corporation, appointing a receiver and enjoining defendant and its agents from doing any further business. One Mix had been employed by defendant as a canvassing agent and was to receive a stipulated annual compensation for his services *" during the continuance of this contract * * * during said Mix's term of full service in and for said company "* (italics in original). Mix was paid to the date of dissolution order but claimed the stipulated salary for the balance of the term (less what he had earned from other sources). In denying this claim the court said, per FINCH, J. (pp. 179–180): " What had happened was a dissolution of the contract by the sovereign power of the State, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement. One party was a corporation. It drew its vitality from the grant of the State, and could only live by its permission. It existed within certain defined limitations, and must die whenever its creator so willed. The general agent who contracted with it did so with knowledge of the statutory conditions, and these must be deemed to have permeated the agreement, and constituted elements of the obligation. (*People* v. *Security Life Ins. Co.,* 78 N. Y. 115.) Then, too, the subject-matter of the contract was that of skilled personal services to be rendered by one and received by the other. It was inherent in the bargain that a substituted service would not answer. The company were not bound to accept another's performance instead of the

chosen agent's, nor was he in turn bound to work for some other master. The contract in its own nature was dependent upon the continued life of both parties. With the natural death of one, or the corporate death of the other, the contract must inevitably end. So that, in its own inherent nature, by the unexpressed conditions subject to which it was made, and by the decree enjoining both parties at the same moment from further performance, the contract was terminated and no breach existed.''

The court was careful to point out that a different result followed in the case of the policyholders who had fully performed by paying the excess of premiums which made up the reserves, and, therefore, they should share in the distribution of what was left of the reserve (pp. 184–185). The court concluded (p. 185): '' In distributing such assets a court of equity may and must give heed to equitable considerations. The claimant is not suing the company at law, for the corporation is dead. He comes in collision with the policy-holders in equity; and while he is found to have not even a just debt for damages because of his relation to the company and the nature of his contract, and therefore no shadow of an equity against the assets, the policy-holders resisting his claim are protected by an equity not to be overlooked or disregarded.''

In *Paramount Famous Lasky Corp.* v. *National Theatre Corp.* (49 F. 2d 64) plaintiff-distributor sued for breach of contract for the distribution of certain photoplays furnished by it for which defendant-exhibitor had agreed to pay. Defendant demurred on the ground that plaintiff had failed to comply with a condition precedent to suit, in that it had not submitted the matters in controversy to arbitration, as provided in the contract. The arbitration clause of the contract had been held to violate the Sherman Antitrust Act (U. S. Code, tit. 15, § 1 *et seq.*) in a suit to which defendant had not been a party. The decree in that case had not been entered on plaintiff's consent but after a fully contested litigation (see *United States* v. *Paramount Famous Lasky Corporation,* 34 F. 2d 984, affd. *sub nom. Paramount Famous Lasky Corp.* v. *United States,* 282 U. S. 30). The court overruled the demurrer upon the ground that the antitrust decree treated the contract as divisible, struck out as unlawful only the arbitration clause, and declared lawful the provisions for breach of which this suit was brought. The court also pointed out that because of the antitrust decree the machinery for arbitration set up in the contract had ceased to exist,

citing *People* v. *Globe Mutual Life Ins. Co.* (91 N. Y. 174, *supra*). The foregoing decision did not deprive the stranger to the antitrust decree of its day in court, which would be the result of sustaining this defense in the case at bar; on the contrary, the cited decision required the parties to litigate their controversy in court instead of resorting to the arbitration which had been declared illegal.

In *Alexewicz* v. *General Aniline & Film Corp.* (181 Misc. 181) the Secretary of the Treasury took possession of defendant's business and terminated plaintiff's contract of employment therein, pursuant to the First War Powers Act, 1941 (Act, § 301; U. S. Code, tit. 50, Appendix, § 616). Both plaintiff and defendant were foreign nationals as defined in that statute. The court concluded that the acts of the Secretary in terminating plaintiff's contract were fully authorized by the statute and Executive Orders issued pursuant thereto (pp. 187–192) and, therefore, applied the principle that " By act of government there was complete frustration of performance excusing the [defendant] from performance as matter of law." (*Matter of Kramer & Uchitelle, Inc.*, 288 N. Y. 467, 472.) It is settled law in this State that the principle of frustration by supervening act of the sovereign applies only to legislative or executive acts which render performance impossible (*Matter of Kramer & Uchitelle, Inc.*, *supra*; *International Spangles Corp.* v. *Marrow Mfg. Corp.*, 294 N. Y. 295, 297–299; *Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290, 297–301; *Heine* v. *Meyer*, 61 N. Y. 171, 175–177.) The decision in *Mahr* v. *Norwich Union Fire Ins. Society* (127 N. Y. 452, 461–462, *supra*) indicates that this principle does not extend to a judicial decree enjoining performance.

The Restatement of the Law of Contracts states (§ 458) that " A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing * * * contributory fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited (a) [by a Federal statute or municipal statute], or (b) by a judicial, executive or administrative order made with due authority by a judge * * *." Illustration 3 of that section states that a promisor is excused from performance if he is restrained by an injunction obtained by a third party without just grounds and he is unable to secure dissolution of the injunction after diligent effort. Inasmuch as defendants consented to the injunction, it cannot be argued that they have been unable to dissolve it in spite of diligent effort.

It is not necessary, however, to rely on defendants' failure to fulfill the qualifying clause in the foregoing statement. To the extent that the Restatement declares that the promisor may be excused from performance by any decree in personam to which the promisee is not a party, it is contrary to the positive holding in *Mahr* v. *Norwich Union Fire Ins. Society* (*supra*) and, therefore, cannot be accepted as the law of this State. Further, such a proposition seems to me to be manifestly unfair. An executive or legislative prohibition is designed to secure a general and public purpose. If in accomplishing this objective, it incidentally frustrates, and therefore excuses, performance under private contracts, that result may have to be accepted because of the public good secured by the prohibition. The same considerations apply to a decree in rem by a court acting in its administrative capacity, as in the liquidation of an insolvent insurer. (*People* v. *Globe Mutual Lfe Ins. Co.*, 91 N. Y. 174, *supra*.) But a judicial decree in personam adjudicates only a private controversy between the parties thereto and thus applies even if one of the parties is the United States. No general or public purpose is served by allowing such a decree to excuse the performance owed by one of the parties to a stranger, especially since the United States has other remedies available if it concludes that such performance should be prevented in the public interest.

The statement in Williston on Contracts (Vol. 6, § 1939) is substantially similar to that in the Restatement and is subject to the same observations.

The second separate and complete defense alleges that if any assignment had been made to plaintiff of its predecessors' rights under the Agreement, all such assignments were revoked, cancelled and rescinded or otherwise terminated prior to the commencement of this action. This defense is bad as a conclusion of law, without alleging any of the facts to support it (*Willey* v. *Cameron, Michel & Co., Inc.*, 217 App. Div. 651, 654–655; *New Amsterdam Casualty Co.* v. *National Union Fire Ins. Co.*, 236 App. Div. 494, 496; *Levan* v. *American Safety Table Co., Inc.*, 222 App. Div. 110, 114).

If defendants have grounds for believing the existence of facts to prove this defense but are not able to plead them with sufficient particularity, they may move to examine plaintiff before trial or may move to amend at any time prior to the trial, after they have ascertained the facts.

Defendants attack the sufficiency of plaintiff's allegation in paragraph 7 of the complaint, that its predecessors in interest

" duly assigned " to it all rights under the Agreement. This allegation is treated as a mixed statement of law and fact; it may be subject to a motion to be made more definite and certain but is not subject to demurrer (*McKee* v. *Jessup,* 62 App. Div. 143).

The motion to strike out the second complete and separate defense as insufficient in law is granted, with leave to defendants to serve an amended answer within twenty days after service of a copy of the order to be entered hereon. Settle order.